IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Appellant, | ) | 2 CA-CR 2003-0027 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | O P I N I O N |
| MARY ANN LIVINGSTON, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF GILA COUNTY

Cause No. CR2002-330

Honorable Robert Duber II, Judge

AFFIRMED

Daisy Flores, Gila County Attorney
  By June Ava Florescue
                                                                    Globe
                                                   Attorneys for Appellant


Law Office of Kristen Curry, P.L.L.C.
  By Kristen M. Curry
                                                                  Phoenix
                                                   Attorney for Appellee

E C K E R S T R O M, Judge.

¶1 The trial court granted appellee Mary Livingston's motion to suppress the evidence seized from her car after she was stopped for a possible traffic violation. The state appeals that ruling, claiming the officer possessed constitutionally permissible grounds for stopping Livingston. We affirm.

¶2 Livingston was charged with transportation of marijuana for sale, a class two felony, personal possession of marijuana, possession of drug paraphernalia, and use of marijuana, all class six felonies. Livingston filed a motion to suppress evidence and argued, inter alia, that the officer lacked reasonable suspicion to stop her vehicle because she had not violated any laws. The state countered that Livingston had violated A.R.S. § 28-729(1) by briefly traversing the shoulder line.

¶3 We review the trial court's granting of a motion to suppress for an abuse of discretion. State v. Gulbrandson, 184 Ariz. 46, 58-59, 906 P.2d 579, 591-92 (1995). We review do novo the court's ultimate legal determination of the propriety of a stop as a "mixed question of law and fact," State v. Rogers, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996), but we consider the evidence presented at the hearing in the light most favorable to upholding its finding, State v. Ossana, 199 Ariz. 459, ¶7, 18 P.3d 1258, ¶7 (App. 2001).

¶4 While patrolling in an unmarked vehicle, Officer Torres of the Department of Public Safety began following Livingston's car northbound on Highway 77. Torres testified that Livingston's right side tires had crossed the white shoulder line on one occasion.

¶5 Although Torres characterized that stretch of highway as rural, curved, and dangerous, he conceded that Livingston had been driving within the speed limit and that she did not weave or engage in any erratic driving. On the stretch of highway in question, only twelve

2

inches of the shoulder is paved. The remaining shoulder is dirt. According to Torres, Livingston's wheels stayed on the paved portion of the highway at all times, and she did not "jerk[]" her vehicle or over-correct after crossing the white line. Torres conceded "there was no other traffic around" and that when Livingston crossed the right-hand line, that deviation had not affected any other traffic.

¶6 Nonetheless, Torres initiated a traffic stop for an alleged lane-usage violation. While speaking with Livingston, Torres smelled the odor of marijuana and saw two clear plastic bags in Livingston's purse. He requested permission from Livingston to search the trunk of her car. She consented. Torres found over one hundred pounds of marijuana and $30,182.25 in American currency.

¶7 Livingston testified that the officer's unmarked car had approached her vehicle from behind at a high rate of speed. She maintained that she had not crossed the shoulder line. To the contrary, she insisted that she had been driving very carefully because an oncoming truck had alerted her to the presence of law enforcement officers several miles before she first had encountered Torres's vehicle. Livingston also presented the videotape Torres had made of another traffic stop immediately preceding the stop in question. She argued that this videotape demonstrated Torres's willingness to execute traffic stops as a pretext to make contact with drivers.

¶8 After reviewing the videotape of the prior stop and hearing the testimony of Torres and Livingston, the trial court found that Livingston's "perhaps momentary crossing of the line . . . was not so egregious as to constitute a violation of [the] statute." The trial court concluded therefore that "the officer had no true legal violation to observe" and granted Livingston's motion

3

to suppress. In so doing, the court found that "the officer's, at least secondary . . . intention . . . was to gain the opportunity to observe the vehicle's occupant more intently." After the court granted the motion to suppress, the state moved to dismiss the case without prejudice so that it could appeal the trial court's ruling. The trial court granted that request. The state has timely appealed and urges this court to find that the trial court erred in finding the traffic stop was invalid.

¶9        "An investigatory stop of a motor vehicle constitutes a seizure under the Fourth Amendment." State v. Gonzales-Gutierrez, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). Because such stops are less intrusive than arrests, officers need not possess probable cause to justify them. United States v. Brignoni-Ponce, 422 U.S. 873, 878, 881, 95 S. Ct. 2574, 2578 2580, 45 L. Ed. 2d 607, 614, 616 (1975). Rather, they need only possess a reasonable suspicion that the driver has committed an offense. Berkemer v. McCarthy, 468 U.S. 420, 439, 104 S. Ct. 3138, 3149-50, 82 L. Ed. 2d 317, 334 (1984); Tornabene v. Bonine ex rel. Ariz. Highway Dep't, 203 Ariz. 326, ¶27, 54 P.3d 355, ¶27 (App. 2002). Under this standard, the officer must possess "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Gonzales-Gutierrez, 187 Ariz. at 118, 927 P.2d at 778, quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1996). When officers make traffic stops based on facts that neither constitute a violation of the law nor constitute reasonable grounds to suspect the driver has committed an offense, they run afoul of the Fourth Amendment requirement that they possess objectively reasonable grounds for the intrusion. United States v. Mariscal, 285 F.3d 1127, 1130-33 (9th Cir. 2002); United States v. Lopez-Soto,

4

205 F.3d 1101, 1105-6 (9th Cir. 2000); United States v. Lopez-Valdez, 178 F.3d 282, 289 n.6 (5th Cir. 1999); United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998).

¶10 Here, the state argues that the officer witnessed objective facts that constituted a violation of § 28-729(1). We do not agree. Section 28-729(1) reads, in pertinent part, as follows:

> If a roadway is divided into two or more clearly marked lanes for traffic, the following rules in addition to all others consistent with this section apply:
>
> 1. A person shall drive a vehicle as nearly as practicable entirely within a single lane and shall not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety.

(Emphasis added.) Under that statute, a driver is required to remain exclusively in a single lane only "as nearly as practicable" under the circumstances. That language demonstrates an express legislative intent to avoid penalizing brief, momentary, and minor deviations outside the marked lines. Bliss v. Treece, 134 Ariz. 516, 519, 658 P.2d 169, 172 (1983) (interpreting prior version of § 28-729(1) "to exclude from its reach those movements which are beyond the driver's control").

¶11 In assessing similar motor vehicle statutes, several courts have arrived at the same conclusion we reach here. In United States v. Gregory, 79 F.3d 973, 978 (10th Cir. 1996), the Tenth Circuit evaluated the constitutionality of a stop predicated on a Utah statute virtually identical to § 28-729(1). The Utah statute required vehicles to be operated "'as nearly as practicable entirely within a single lane.'" Id., quoting Utah Code Ann. § 41-6-61(A). The court suppressed the evidence gained during the stop and found that, on a winding road, "an isolated incident" of a vehicle crossing into the emergency lane of the roadway did not constitute a

violation of the Utah code. Id.; see also Rowe v. Maryland, 769 A.2d 879, 883-89 (Md. Ct. Spec. App. 2001) (momentary crossing the shoulder line twice not a violation of statute which required vehicle to stay within lane "'as nearly as practicable'"), quoting Md. Code Ann. § 21-309(b); Crooks v. Florida, 710 So. 2d 1041, 1042-43 (Fla. Dist. Ct. App. 1998) (no violation of statute nearly identical to § 28-729(1) even when driver crossed edge line three times); Montana v. Lafferty, 967 P.2d 363, ¶¶14-18 (Mont. 1998) (crossing "fog" line did not violate statute nearly identical to § 28-729(1)).

¶12        The state does not dispute that Livingston otherwise drove safely on a dangerous, curved road apart from her alleged isolated and minor breach of the shoulder line. Under such circumstances, the trial court did not abuse its discretion when it found that Livingston committed no violation and implicitly found that the officer had lacked a reasonable basis for the stop.[1]

¶13        The state also argues that the trial court erred when it allowed inquiry into, and commented upon, the officer's subjective motivation in making the stop. As the state correctly notes, the subjective motives of an officer do not invalidate an otherwise lawful traffic stop. Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 98 (1996); State v. Vera, 196 Ariz. 342, ¶5, 996 P.2d 1216, ¶5 (App. 1999). However, Livingston did not cite the officer's motivations as a ground for invalidating the stop. Rather, she argued that an officer's ulterior motives for the stop would be relevant to the officer's credibility on the threshold

---

[1]In evaluating the reasonableness of a stop, the trial court must evaluate the totality of the circumstances. Gonzales-Gutierrez, 187 Ariz. at 118, 927 P.2d at 778. For this reason, seemingly small factual distinctions can affect a court's conclusions as to the reasonableness of a stop. See, e.g., State v. Acosta, 166 Ariz. 254, 257, 801 P.2d 489, 492 (App. 1990) (officer possessed reasonable cause for stop where driver crossed "dividing line" as many as six times).

question of whether he had actually witnessed a traffic violation. Arizona's rules of evidence explicitly permit such an inquiry. See Ariz. R. Evid. 607, 17A A.R.S.; State v. Ramos, 108 Ariz. 36, 39, 492 P.2d 697, 700 (1972) ("'[A] party against whom a witness is produced has a right to show everything which may in the slightest degree affect [the witness's] credibility.'"), quoting State v. Holden, 88 Ariz. 43, 54, 352 P.2d 705, 713 (1960).

¶14        Nor did the trial court consider the officer's motivation improperly as part of its determination that the officer lacked reasonable grounds for the stop. Although the trial court quite bluntly expressed its negative view of pretextual stops, the court recognized that such stops do not violate the law. In its ruling from the bench, the court specifically noted:

> [T]he local police agencies . . . candidly state that they utilize violations of traffic laws to enable them to inquire about the circumstances, particularly about out of state drivers.
>
> And I have on numerous occasions sustained searches nonetheless, because the subjective intent of the police is not relevant, they can do that.

Accordingly, we do not find that the trial court employed any improper considerations in suppressing the fruits of an unconstitutional stop.

¶15        For the above reasons, we affirm the trial court's order granting Livingston's motion to suppress.

_____
PETER J. ECKERSTROM, Judge

CONCURRING:

7

_____
PHILIP G. ESPINOSA, Chief Judge


_____
JOHN PELANDER, Presiding Judge