SHAW, Judge,
dissenting.
Drug trafficking is a serious menace to this State and to this nation and, in my opinion, law-enforcement agencies must use every available means at their disposal toward its elimination, provided that those means do not run afoul of the protections afforded by the United States Constitution. In a similar vein, I think that it goes without saying that appellate courts should refrain from making decisions that unnecessarily impinge upon the ability of law enforcement to protect the people of Alabama from those who would violate this State’s criminal laws and thereby endanger lives and property. However, these personal observations notwithstanding, I must respectfully disagree with the majority’s handling and resolution by an unpublished memorandum of the important Fourth Amendment issue squarely presented in this case, a case that appears to be one of first impression in this State: Whether a single 6- to 12-inch deviation from a driver’s course across the “fog line” and onto the shoulder of an interstate highway, under circumstances that do not appear to pose a safety risk to the driver or other motorists, provides the necessary reasonable basis for the police to stop the driver on suspicion that a lane-change violation has occurred under § 32-5A-88, Ala. Code 1975. After carefully reviewing the record, and after reading the entire testimony of the only witness appearing at the suppression hearing, Deputy Sergeant Tom Hammonds, I cannot agree with the majority that the stopping of Virginia Gal-indo’s truck was objectively based on probable cause or reasonable suspicion.
As a threshold matter, I note that Sgt. Hammonds conceded at the suppression hearing that although his attention was first drawn to Galindo’s pickup truck because the tailgate, which was down, obstructed his view of the license plate, he later testified that after following Galindo for a period of time he realized that the license plate was properly visible from the rear:
“Q. [Galindo’s attorney]: And one of the vehicles that you happened to notice is — I believe it was gray, the 2004 Chevy that you later found was driven by Ms. Galindo?
“A. [Sgt. Hammonds]: Yes.
“Q. [Galindo’s attorney]: And I’m going to stop there for a second and go now to the eventual pulling over of her, okay?
“A. [Sgt. Hammonds]: Yes.
“Q. [Galindo’s attorney]: We’ve talked about I think — I think you were asked something about a tag or something?
“A. [Sgt. Hammonds]: Yes.
“Q. [Galindo’s attorney]: That’s what drew your attention initially?
“A. [Sgt. Hammonds]: Yes.
“Q. [Galindo’s attorney]: But the reason you pulled Ms. Galindo over was because she crossed the fog line?
“A. [Sgt. Hammonds]: Yes. I believe I did write her a warning for that.
“Q. [Galindo’s attorney]: Okay. And — but that was it, right, because when you got up to her you could actually see the tag of the vehicle? Is that—
“A. [Sgt. Hammonds]: Yes, you could see it, but it was still obstructed a little bit by the tailgate.
*953 “Q. [Galindo’s attorney]: And, in your opinion, was that an illegal — was that a citable violation there, having the tailgate down?
“A. [Sgt. Hammonds]: No, not — not the tailgate down in itself, no. But it was obstructing the tag, yes.
“Q. [Galindo’s attorney]: Okay.
“A. [Sgt. Hammonds]: But when you got closer you could see the tag, so — I did stop her for crossing over the fog line.”
(R. 38-35.)
Therefore, it is clear from the record that there is no objective basis for concluding that an obstructed view of the license plate could have provided probable cause or reasonable suspicion for stopping Galin-do’s truck.
The record indicates that Sgt. Ham-monds initiated his stop based solely on Galindo’s single 6- to 12-inch deviation from the lane onto the shoulder of the highway.[1] Sgt. Hammonds testified that Galindo promptly corrected the deviation and that he observed no other action on Galindo’s part that could be characterized as erratic or unsafe driving. Likewise, Sgt. Hammonds did not testify to the weather conditions at the time of the stop. When specifically asked whether another motorist was placed in danger by Galindo’s movement, Sgt. Hammonds answered in the negative:
“Q. [Prosecutor]: Sergeant Ham-monds, you testified earlier that at the time that she ran off the road when you observed her, in response to [Galindo’s attorney’s] suggestion that she wasn’t being a danger to others,—
“A. [Sgt. Hammonds]: No.
“Q. [Prosecutor]: — you stated no?
“A. [Sgt. Hammonds]: No, she wasn’t being a danger. She was — the only other person is if she had had a passenger in the vehicle, which she did.
“Q. [Prosecutor]: Let me ask you this: Did you know at the time you observed that what was causing her to run off the road?
“A. [Sgt. Hammonds]: No, ma’am.
“Q: [Prosecutor]: And although there were no cars there in the immediate area at the very moment that she ran off the road, did you know that she would not encounter another driver throughout her travel?
“A. [Sgt. Hammonds]: No, ma’am.”
(R. 49-50.)
There would be no question in this case that Sgt. Hammonds had probable cause or reasonable suspicion to believe that Gal-indo had committed a traffic violation when she crossed the line if the statute in question required a vehicle to be driven entirely within a single lane at all times. However, § 32-5A-88 provides, in pertinent part:
“Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
*954 “(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.”
(Emphasis added.) Under this statute, a driver is required to remain exclusively within a single lane only “as nearly as practicable” under the circumstances. The express language of this statute constitutes recognition by the legislature that it is not practicable, perhaps not even possible, for a motorist to maintain a single lane at all times and under all circumstances and that the crucial legislative concern is safety rather than precision driving. The statute signals a clear legislative intent to avoid penalizing momentary and minor deviations outside the marked lines of a roadway — minor deviations that pose no safety risk to the occupants of the vehicle or to other motorists or pedestrians. The statute specifically provides that even when a brief deviation from a lane occurs, no traffic violation results unless the driver fails to ascertain that his or her movements could be made with safety.
The record here reflects no objective evidence indicating that Galindo was not driving “as nearly as practicable” within her lane or that she failed to ascertain that her movements could be safely made or that her brief deviation across the fog line endangered anyone. Stated another way, the record indicates that the specific and articulable facts that were before Sgt. Hammonds at the time of the stop — that Galindo’s vehicle had drifted across the line one time under circumstances that did not endanger anyone — were simply not sufficient to allow a police officer in Sgt. Hammonds’s position to reasonably infer that § 32-5A-88 had been violated. Sgt. Hammonds’s subjective belief, as reflected in his testimony, that Galindo might at some point in the future drive her truck so as to endanger an occupant of the truck or a motorist or pedestrian that she might encounter somewhere down the road is simply not sufficient to satisfy the objective standard by which courts determine whether probable cause or reasonable suspicion exists.[2] I also note that the record does not indicate, and the State does not argue, that there was an objective basis for Sgt. Hammonds to conclude that Galindo was driving while intoxicated or while she was otherwise impaired.
Research provided by Galindo’s counsel on appeal, along with my independent research, indicates that there is extensive caselaw from numerous jurisdictions addressing the issue presented here. It appears that courts reach different conclusions as to whether probable cause or reasonable suspicion exists, depending on the circumstances presented. One circumstance discussed in some of the cases concerns the weather conditions at the time of the stop that might impact the handling or maneuverability of a vehicle on a certain roadway. Many courts have held that a driver’s slightly crossing over the fog line one time for a moment does not, standing alone, justify a traffic stop, and many of those cases involved lane-change statutes similar or identical to Alabama’s statute. See, e.g., State v. Abeln, 136 S.W.3d 803 (Mo.Ct.App.2004); *955 Rowe v. State, 363 Md. 424, 769 A.2d 879, 883-89 (2001); Crooks v. State, 710 So.2d 1041, 1042-43 (Fla.Dist.Ct.App.1998); State v. Lafferty, 291 Mont. 157, 967 P.2d 363, 365-66 (1998); Brown v. State, 188 Ga.App. 184, 372 S.E.2d 514, 515-16 (1988); Hernandez v. State, 983 S.W.2d 867 (Tex.Ct.App.1998); State v. Tarvin, 972 S.W.2d 910, 911-12 (Tex.Ct.App.1998); Corbin v. State, 33 S.W.3d 90 (Tex.Ct. App.2000), rev’d on other grounds, 85 S.W.3d 272 (Tex.Crim.App.2002); State v. Livingston, 206 Ariz. 145, 75 P.3d 1103, 1105-06 (Ct.App.2003); State v. Cerny, 28 S.W.3d 796, 799-801 (Tex.Ct.App.2000); Jordan v. State, 831 So.2d 1241 (Fla.Dist. Ct.App.2002); People v. Leyendecker, 337 Ill.App.3d 678, 272 Ill.Dec. 543, 787 N.E.2d 358 (2003); State v. Caron, 534 A.2d 978 (Me.1987); United States v. Gregory, 79 F.3d 973 (10th Cir.1996); United States v. Ochoa, 4 F.Supp.2d 1007 (D.Kan.1998); State v. Tague, 676 N.W.2d 197 (Iowa 2004); United States v. Freeman, 209 F.3d 464 (6th Cir.2000); State v. Bello, 871 P.2d 584 (Utah Ct.App.1994); Commonwealth v. Gleason, 567 Pa. 111, 785 A.2d 983 (2001); United States v. Colin, 314 F.3d 439 (9th Cir.2002); United States v. Smith, 799 F.2d 704 (11th Cir. 1986); United States v. Sugar, 322 F.Supp.2d 85 (D.Mass.2004); United States v. Gastellum, 927 F.Supp. 1386 (D.Col.1996). Other courts have reached different conclusions. Compare State v. Tijerina, 61 Wash.App. 626, 811 P.2d 241 (1991); State v. Shivers, 827 So.2d 534 (La.Ct.App.2002); State v. Waters, 780 So.2d 1053 (La.2001); Zimmerman v. North Dakota Dep’t of Transp. Director, 543 N.W.2d 479 (N.D.1996); State v. Battleson, 567 N.W.2d 69 (Minn.App.1997); Tyler v. State, 161 S.W.3d 745 (Tex.Ct.App.2005); State v. Hodge, 147 Ohio App.3d 550, 771 N.E.2d 331 (2002); United States v. Martinez, 354 F.3d 932 (8th Cir.2004). The majority does not address these cases.
Although I appreciate the State’s position, and although this case presents, in my view, a close call, I find persuasive the rationale used by those courts that have found a single, minor lane deviation to be insufficient to provide the probable cause or reasonable suspicion necessary to justify a stop. One need only take a brief drive along Alabama’s interstate highways to quickly realize that it is a common occurrence for drivers to momentarily and slightly cross the fog lines, especially in breezy or windy conditions, the existence of which were not addressed by the State here. In the absence of dangerous conditions, and without the erratic operation of a vehicle or some other unusual circumstance, none of which was shown here, such a momentary and minor “drifting” across the line, as in this case, does not, in my opinion, justify an intrusive stop by a police officer. To hold otherwise is judicially to sanction stops on no more than a hunch or speculation on the part of a law-enforcement officer and to allow practically every driver of a vehicle traveling on an Alabama roadway to be stopped. I believe that the Fourth Amendment requires something more.
I would reverse the trial court’s order denying Galindo’s motion to suppress; therefore, I respectfully dissent.
COBB, J., concurs.

. To put the cause for the stop into perspective, Galindo crossed the fog line at most not much more than the length of the paper that this dissenting opinion is printed on. But I also point out that, under the majority’s rationale, i.e., that crossing over the line even six inches, standing alone, provides probable cause or reasonable suspicion to believe that a traffic violation has occurred, it would be difficult to logically distinguish between the facts of this case and one in the future involving less than a six-inch deviation across the line. I am therefore uncertain whether the majority’s viewing of this 6- to 12-inch crossing of the fog line, standing alone, as sufficient to justify a stop suggests that it also views any crossing of the fog line sufficient.

. In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court reaffirmed the use of an objective standard by which to judge the reasonableness of a traffic stop ostensibly based on probable cause to believe a traffic violation has occurred. The Court recognized that there are a multitude of traffic regulations the violation of which will give rise to the justifiable stop of a vehicle; however, the Court made it clear that the constitutionality of a stop still depends on the State's establishing the reasonableness of the stop.