IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                  )
                                       )        2 CA-CR 2006-0157
                      Appellant,       )        DEPARTMENT B
                                       )
          v.                           )        O P I N I O N
                                       )
CHRISTOPHER CRUZ CUEVAS,               )
                                       )
                      Appellee.        )
                                       )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20060254

Honorable Christopher Browning, Judge

REVERSED AND REMANDED

Barbara LaWall, Pima County Attorney
  By Taren M. Ellis                                            Tucson
                                                Attorneys for Appellant


Isabel G. Garcia, Pima County Legal Defender
  By Stephan J. McCaffery                                      Tucson
                                                Attorneys for Appellee

B R A M M E R, Judge.

¶1        The state appeals from the trial court's grant of appellee Christopher Cuevas's

motion to suppress evidence that police had discovered following the traffic stop of a vehicle

in which Cuevas was a passenger. The state argues the trial court erred in determining the police officer "could not have legitimately 'suspected'" the driver had committed a traffic violation. We reverse.

**Factual and Procedural Background**

¶2 On appeal from a grant of a motion to suppress, we view the facts in the light most favorable to upholding the trial court's ruling. *State v. Livingston*, 206 Ariz. 145, ¶ 3, 75 P.3d 1103, 1104 (App. 2003). In January 2006, Tucson Police Officer Jeffrey Hawkins was "conducting a surveillance on a suspected narcotics house for methamphetamine." After he saw a red Mercury Mystique leave the house, he "began to tail that vehicle" in his unmarked police car. Edwin Martin was driving the vehicle; Cuevas was his passenger.

¶3 Hawkins followed the Mercury "north on Swan [Road] to Grant [Road]" and testified Martin then "ma[d]e an improper left turn or a wide left turn onto Grant instead of turning into the median lane." Hawkins testified that, at that location, Grant has three lanes for westbound traffic. Hawkins was between thirty to seventy-five feet behind the Mercury when Martin made the turn, and there were no other vehicles between his car and the Mercury. Hawkins testified traffic was "fairly light," there was no oncoming traffic, and no apparent reason for the Mercury to turn into the middle lane as opposed to the median lane. Martin testified he had turned into the median lane.[1]

---

[1]The trial court did not resolve this factual question, but instead decided whether the stop was proper as a matter of law.

2

**¶4**      Hawkins "called for a marked patrol car officer unit to come and make a stop on the [Mercury]." The officer stopped the car "about a mile" from the Grant and Swan intersection. Hawkins admitted he had been "looking . . . for some reason to pull [the Mercury] over," and the wide left turn was the "sole basis" for the traffic stop.[2] Although the transcript of the hearing does not establish what transpired at the traffic stop, a copy of the patrol officer's report, attached to Cuevas's motion to suppress, states Cuevas was arrested pursuant to an outstanding warrant and the officer's search of the Mercury uncovered a handgun and drug paraphernalia. A grand jury indicted Cuevas for possession of a deadly weapon by a prohibited possessor and possession of drug paraphernalia.

**¶5**      Following an evidentiary hearing, the trial court granted Cuevas's motion to suppress and the state's subsequent motion to dismiss the charges. This appeal followed.

### Discussion

**¶6**      "We review the trial court's granting of a motion to suppress for an abuse of discretion." *Livingston*, 206 Ariz. 145, ¶ 3, 75 P.3d at 1104. "We review *de novo* the court's ultimate legal determination of the propriety of a stop as a 'mixed question of law and fact.'" *Id., quoting State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996). For the investigatory stop of a motor vehicle to be valid, the officer must "possess a reasonable suspicion that the driver has committed an offense," that is, "'a particularized and objective

---

[2]"[T]he subjective motives of an officer do not invalidate an otherwise lawful traffic stop." *State v. Livingston*, 206 Ariz. 145, ¶ 13, 75 P.3d 1103, 1106 (App. 2003).

basis for suspecting the particular person stopped of criminal activity.'" *Id.* ¶ 9, *quoting State v. Gonzales-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). "When officers make traffic stops based on facts that neither constitute a violation of the law nor constitute reasonable grounds to suspect the driver has committed an offense, they run afoul of the Fourth Amendment requirement that they possess objectively reasonable grounds for the intrusion." *Id.*

¶7 Resolution of this case hinges on whether A.R.S. § 28-751(2) requires a driver making a left turn to turn only into the leftmost lane of the street onto which he or she is turning. "Interpretation of statutes is a question of law that we review de novo." *State v. Keener*, 206 Ariz. 29, ¶ 8, 75 P.3d 119, 121 (App. 2003). "Generally, we apply the plain and unambiguous language as it is written unless to do so would produce an absurd or impossible result." *Id.*

¶8 Section 28-751(2) governs the "[r]equired position and method of turning" for left turns and states:

> The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle. If practicable the driver shall make the left turn from the left of the center of the intersection and shall make the turn to the left lane immediately available for the driver's direction of traffic.

The trial court reasoned that determining which lane is "immediately available" depends on the position of the vehicle when it begins the turn. The trial court stated, "if the left turning motion was beg[u]n at the southern-most part of Swan Road, the median lane would clearly

4

be the appropriate lane for the turn, as it would be the 'left lane immediately available,'" and "if the left turning maneuver was commenced slightly north of that point . . . the turn could lawfully be made into one of the [through] lanes . . . other than the median lane." Central to the court's conclusion was its determination that the latter maneuver was "neither prescribed, nor prohibited by A.R.S. § 28-751, or any other statute known to the Court."

¶9        Section 28-751(2) states "the driver shall make the left turn from the left of the center of the intersection."[3] This portion of the statute expressly describes the area from which a driver must begin a left turn. For the following reasons, we conclude the most reasonable interpretation is that a driver must begin a turn sometime before crossing the center of the intersection. Unless the median lane is for some reason unavailable, the driver may not proceed so far into the intersection that one of the through lanes, instead of the median lane, becomes the lane "immediately available" because doing so would require the driver to cross the center of the intersection before beginning the turn. The statute's

---

[3]Section 28-601(8), A.R.S., defines an "intersection" as

> the area embraced within the prolongation or connection of the lateral curb lines, or if none, the lateral boundary lines of the roadways of two highways that join one another at, or approximately at, right angles, or the area within which vehicles traveling on different highways joining at any other angle may come in conflict. If a highway includes two roadways thirty or more feet apart, each crossing of each roadway of the divided highway by an intersecting highway is a separate intersection. If the intersecting highway also includes two roadways thirty or more feet apart, each crossing of two roadways of the highways is a separate intersection.

5

description of "the left of the center of the intersection," § 28-751(2), from which the turn is to be made may refer either to the left of the intersection's center when viewing it from the driver's original direction of travel or from his or her intended direction of travel after the turn has been completed. Thus, we must interpret this ambiguous statute to give it its most reasonable construction. *See State v. Powers*, 200 Ariz. 123, ¶ 8, 23 P.3d 668, 671 (App. 2001) ("[W]e attempt to give unclear [statutory] language a sensible construction."). Doing so, we read it to refer to the "center of the intersection" irrespective of the driver's direction of travel; that is, the driver must stay to the left of the center of the intersection throughout the entire turn. The trial court's interpretation renders this portion of § 28-751(2) superfluous. "We must interpret the statute so that no provision is rendered meaningless, insignificant, or void," *Mejak v. Granville*, 212 Ariz. 555, ¶ 9, 136 P.3d 874, 876 (2006), and conclude this is the most reasonable interpretation of that portion of the statute, *see Powers*, 200 Ariz. 123, ¶ 8, 23 P.3d at 671.[4]

¶10        In *State v. DeSantiago*, 983 P.2d 1173, 1175 (Wash. Ct. App. 1999), the Washington Court of Appeals similarly interpreted its state's left-turn statute. The court concluded the portion of the statute requiring a driver making a left turn to "ma[k]e [the turn] to the left of the center of the intersection," Wash. Rev. Code Ann. § 46.61.290(2), meant "the driver must make the turn to the left of the center of the intersection on the roadway

---

[4]We recognize the statute could be more clear, as is A.R.S. § 28-751(1), which requires right turns to be "made as close as practicable to the right-hand curb or edge of the roadway."

6

being entered. This means the driver shall not cross over centerlines of the intersecting streets until executing the turn." 983 P.2d at 1175. In *State v. Steen*, 102 P.3d 1251, 1253-54 (Mont. 2004), the Montana Supreme Court interpreted that state's left-turn statute, which requires that "the left turn shall be made in that portion of the intersection to the left of the center of the intersection," Mont. Code Ann. § 61-8-333(1), to mean that a left turn must be made into the "inside driving lane" because to hold otherwise would render that portion of the statute "superfluous." *See also Richlin v. Gooding Amusement Co.*, 170 N.E.2d 505, 508 (Ohio Ct. App. 1960) (language added to left-turn statute requiring "turn shall be made in that portion of the intersection to the left of the center of the intersection" "ma[d]e it perfectly clear that 'cutting the corner' as distinguished from the earlier requirement to go beyond the center of the intersection before turning left, was intended"). The interpretations these courts have given to language similar to that of § 28-751(2) are consistent with our own, and we are aware of no jurisdiction that has interpreted such language differently.[5]

¶11 Moreover, previous versions of Arizona's left-turn statute have consistently required a driver to begin a turn before crossing the center of the roadway. The version of the statute enacted in 1950 states, for "left turns on two-way roadways," that "the left turn

---

[5]At oral argument, Cuevas argued for the first time that, because § 28-751(2) requires that a driver begin a left turn from the "extreme left-hand lane lawfully available," but only turn into the "left lane immediately available," the driver may, at his or her option, turn into either the leftmost, or median, lane or the lane next to it. However, the statute, which is written in mandatory terms, gives a driver no discretion to select which lane to turn into, unless turning into the leftmost lane is not "practicable."

7

shall be made in that portion of the intersection to the left of the center of the intersection." 1950 Ariz. Sess. Laws 1st Spec. Sess., ch. 3, § 76. For turns "on other than two-way roadways," the statute required a driver "to leave the intersection . . . in the left-hand lane lawfully available to traffic moving in such direction upon the roadway being entered." *Id.* The 1982 version of the statute eliminated the distinction between two-way roads and other types of roads, requiring, like the current version, that a driver make a turn "from the left of the center of the intersection and . . . to the left lane immediately available for his direction of traffic." 1982 Ariz. Sess. Laws, ch. 243, § 4.

¶12        Relying on *Livingston*, Cuevas argues the phrase, "if practicable," in § 28-751(2) "indicat[es] that what follows is not an absolute requirement the breach of which constitutes a traffic violation." In *Livingston*, a police officer stopped a vehicle for a suspected violation of A.R.S. § 28-729(1). 206 Ariz. 145, ¶ 10, 75 P.3d at 1106. That statute reads: "A person shall drive a vehicle as nearly as practicable entirely within a single lane and shall not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety." § 28-729(1). The officer testified the defendant's "right side tires had crossed the white shoulder line on one occasion." *Livingston*, 206 Ariz. 145, ¶ 4, 75 P.3d at 1105. This court concluded the phrase, "as nearly as practicable," "demonstrates an express legislative intent to avoid penalizing brief, momentary, and minor deviations outside the marked lines." *Id.* ¶ 10.

¶13    The trial court here, however, neither found nor discussed whether Martin turned into the center lane or whether a turn into the median lane had been impracticable. It instead based its ruling on its interpretation of the statute. Moreover, nothing in the record suggests Hawkins saw anything that should have caused him to conclude it would have been impracticable for Martin to turn into the median lane.[6] Indeed, Hawkins's testimony strongly suggested the opposite. He testified he had not seen any vehicles or anything in the road "that would have obstructed [Martin from] turning into the proper position," and there had been no "vehicles coming westbound . . . nor making a right turn . . . from southbound Swan." In the absence of facts suggesting a proper turn was impracticable, if the trial court finds credible Hawkins's testimony that Martin did not turn into the median lane, Hawkins clearly had a reasonable suspicion that Martin had violated § 28-751(2). *See Livingston*, 206 Ariz. 145, ¶ 9, 75 P.3d at 1105.

¶14    We conclude the trial court erred in determining § 28-751(2) does not specify where a driver must begin a left turn. Accordingly, because the trial court mistakenly interpreted the statute, it abused its discretion in granting the motion to suppress on the basis

---

[6]Cuevas also relies on *State v. Morgan*, 581 S.E.2d 296 (Ga. Ct. App. 2003). In *Morgan*, a police officer stopped a vehicle after it made a right turn into the left lane of two lanes. *Id*. at 297. The driver "traveled less than 100 feet before getting into the left-turn lane, and turn[ing] left." *Id.* Like § 28-751(1), the Georgia statute requires a right turn to "be made as close as practicable to the right-hand curb or edge of the roadway." Ga. Code Ann. § 40-6-120(a)(1) (West 2006). The court concluded the traffic stop was improper because "the turn described by the officer was not unlawful, but was in fact the only way the driver could proceed to reach [the left turn]." *Morgan*, 581 S.E.2d at 298.

it did. *See Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, ¶ 41, 144 P.3d 519, 532 (App. 2006) ("A court abuses its discretion if it commits legal error in reaching a discretionary conclusion, or if the record lacks substantial evidence to support its ruling."). We reverse[7] the ruling and remand the case to the trial court to determine whether Hawkins's testimony that Martin turned into the through lane instead of the median lane was credible and whether under the circumstances such a turn was "practicable."[8]

_____
                                       J. WILLIAM BRAMMER, JR., Judge

_____

[7]We reverse in spite of the state's brief, which, although it reasons § 28-751(2) requires a driver to turn into the left-most lane, fails to address the trial court's interpretation of the statute or cite authority supporting its own interpretation. *See State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) ("[O]pening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim."). Because this appeal presents a purely legal issue, which we review de novo, we decline to find the state has waived the error. *See Evenstad v. State*, 178 Ariz. 578, 582, 875 P.2d 811, 815 (App. 1993) ("If application of a legal principle . . . would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue [in spite of waiver by the appellant]."). It would behoove the state, however, to comply with the rules of appellate procedure in the future. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi), 17 A.R.S.

[8]Because we determine the trial court based its conclusion on an incorrect interpretation of § 28-751(2), we need not address the state's argument the stop was permissible "because Officer Hawkins believed that the vehicle turned into the middle lane and this mistake of fact would not invalidate the stop."

CONCURRING:

_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge

11