NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KARA LYN LAW, *Appellant.*

No. 1 CA-CR 21-0432
FILED 10-27-2022

Appeal from the Superior Court in Yavapai County
No. P1300CR201801779
The Honorable Krista M. Carman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Tanja K. Kelly
*Counsel for Appellee*

The Zickerman Law Office, PLLC, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge Angela K. Paton joined.

---

**S W A N N**, Judge:

¶1 Kara Lyn Law was convicted of several drug-related offenses. She appeals from the superior court's denial of her two suppression motions. Because the court did not abuse its discretion in denying her motions, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Between 2018 and 2020, Officer Jeffery Pizzi of the Chino Valley Police Department worked on the force's narcotics taskforce, Partners Against Narcotics Trafficking ("PANT"). In June 2018, Officer Pizzi helped the Yavapai-Prescott Tribal Police execute a search warrant at a home on the reservation. Law was not present at the time but did reside at the home, which was owned by her mother. The officers found methamphetamine and evidence of methamphetamine sales at the home. They also saw a black Hummer SUV in the driveway.

¶3 Officer Pizzi received an anonymous tip informing him that Law trafficked methamphetamine and heroin from Phoenix to Yavapai County. After receiving this information, Pizzi contacted a confidential informant ("CI") and asked the CI if they knew anything about Law. The CI told Officer Pizzi that Law brought methamphetamine and heroin into Yavapai County and that she drove a black Hummer. Officer Pizzi also searched Law's criminal record, which revealed multiple drug-related offenses. Based on this information, Officer Pizzi drafted an affidavit and requested a search warrant to place a GPS tracking device on Law's vehicle.

¶4 Officer Pizzi monitored the Hummer's movements via a GPS tracking app. He saw that the Hummer had not moved for a few days and asked Tribal Police to check on the situation. Tribal Police confirmed that the Hummer remained parked at the residence and informed Officer Pizzi that a silver Mustang had appeared at the residence. Officer Pizzi ran the plates and discovered the Mustang was a rental car. He contacted the car company and learned the car had been rented to Law. Law had been

spotted driving the Mustang, and Officer Pizzi confirmed she was the driver via video surveillance. Two days later, Officer Pizzi filed an addendum to the search warrant and attached a GPS tracker to the Mustang.

¶5        Officer Pizzi set up alerts to notify him when the Mustang entered certain geographic areas. On December 8, 2018, he received an alert that the Mustang had traveled to Phoenix and was returning to Yavapai County. Officer Pizzi was unable to respond at the time, so he contacted the on-call detective, Jason Scissons. Officer Pizzi asked Detective Scissons to take over the investigation and "get the vehicle stopped." Detective Scissons found and followed the Mustang in an unmarked vehicle until he observed Law commit traffic violations. He then contacted Deputy Trevor Hearl of the Yavapai County Sherriff's Department. Deputy Hearl caught up to the Mustang, and after observing Law commit traffic violations, pulled the Mustang over.

¶6        Deputy Hearl approached the vehicle from the passenger side. He asked Law for her license and registration. When she opened the glove box to retrieve the documents, Deputy Hearl observed a gallon-size Ziploc bag containing a substance he believed to be methamphetamine. Law initially attempted to cover the bag with her hand, then shut the glove box door. Deputy Hearl asked Law to pull the bag out of the glove box. Law placed the bag on the passenger seat and said that someone must have left it in the car. Deputy Hearl then called Sergeant John Bounds for assistance. The officers placed Law under arrest and read her *Miranda* rights.

¶7        Deputy Hearl conducted a cursory search of Law's person at the scene. Deputy Hearl informed Law that a full search would be conducted at the jail and that she could be charged with promoting prison contraband should they find any illegal items. Law did not admit to having any illegal items in her possession.

¶8        Deputy Hearl first took Law to property evidence where she was interviewed by PANT detectives. He then drove Law to Prescott Jail. As they pulled into the jail parking lot, Deputy Hearl observed Law move around in the passenger compartment. When he opened the door, he saw crushed methamphetamine "all over" and a bindle bag on the floor. Deputy Hearl asked Law where she had hidden the methamphetamine and why she had crushed it in his car. Law admitted to hiding the methamphetamine in her bra and explained that she did not want to be charged with promoting prison contraband.

¶9       The state charged Law with six drug-related offenses and one count of tampering with physical evidence. Law filed motions to suppress the GPS evidence and evidence from the traffic stop. After a suppression hearing, the court denied both motions. The case proceeded to trial and the jury found Law guilty of the following offenses: one count of sale or transportation of a dangerous drug, one count of possession of dangerous drugs for sale, one count of possession or use of narcotic drugs for sale, one count of possession of drug paraphernalia, and one count of tampering with physical evidence. The court sentenced Law to serve a total of ten years in prison with credit for 828 days served. Law appeals.

**DISCUSSION**

I.     DEPUTY HEARL HAD REASONABLE SUSPICION TO CONDUCT A TRAFFIC STOP.

¶10     We review the superior court's denial of a motion to suppress for abuse of discretion but review legal conclusions de novo. *State v. Schinzel*, 202 Ariz. 375, 378, ¶ 12 (App. 2002). "We consider only the evidence presented at the suppression hearing, and we view that evidence in the light most favorable to sustaining the trial court's ruling." *State v. Gay*, 214 Ariz. 214, 223, ¶ 30 (App. 2007).

¶11     The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. "An investigatory stop of a motor vehicle constitutes a seizure under the Fourth Amendment . . . ." *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996). To detain a driver for investigatory purposes, an officer must have reasonable suspicion that the driver has committed an offense. *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968).

¶12     Law argues that the traffic stop of the Mustang was invalid because the officers lacked reasonable suspicion that she committed an offense. But Detective Scissons testified that he observed Law commit three separate traffic violations. First, he saw her drift about one foot over the outer fog line before sharply swerving back into her lane. *See* A.R.S. § 28-729(1) ("Except as provided in § 28-903 [pertaining to motorcycles], a person shall drive a vehicle as nearly as practicable entirely within a single lane and shall not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety."). He also observed the Mustang "driving pretty close behind the car in front of her." *See* A.R.S. § 28-730(A) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent and shall have

due regard for the speed of the vehicles on, the traffic on and the condition of the highway."). Finally, the GPS tracker reported that the Mustang was driving 6 to 8 miles over the speed limit while Detective Scissons tailed the car. *See State v. Rich*, 115 Ariz. 119, 121 (App. 1977) ("Driving over the speed limit . . . creates a presumptive violation of the basic speed law" set forth in A.R.S. § 28-701(A).).

**¶13**        We have previously held that "the violation of a traffic law provides sufficient grounds to stop a vehicle." *State v. Acosta*, 166 Ariz. 254, 257 (App. 1990). Citing *State v. Livingston*, 206 Ariz. 145 (App. 2003), Law argues that a single instance of drifting over the fog line is insufficient to justify a stop. We find *Livingston* distinguishable.

**¶14**        In *Livingston*, the driver momentarily crossed over the dividing line on a curved, dangerous road that was only partially paved. 206 Ariz. at 147, ¶ 5. She remained on the paved section of the road and, as there were no other cars present, her actions did not affect traffic. *Id.* The officer conceded that Livingston did not jerk her wheel or commit any additional traffic violations. *Id.* Unlike the driver in *Livingston*, Law jerked her wheel after drifting a foot over the fog line on a busy road. There is no evidence in the record that road conditions necessitated this deviation.

**¶15**        Law also argues there was insufficient evidence that she was speeding because officers failed to establish whether the GPS tracker was properly calibrated to accurately report her speed. We need not address this argument because a single traffic violation is sufficient to give officers probable cause to conduct a stop. As explained above, Law's lane violation satisfied that requirement. Additionally, Law failed to address the officer's observation that she was following too closely, which is a violation of A.R.S. § 28-730(A). We therefore consider that argument conceded.

II.        PROBABLE CAUSE SUPPORTS THE GPS SEARCH WARRANT.

**¶16**        Law argues that the superior court erred in denying her motion to suppress based upon the GPS search warrant. Placing a GPS tracker on a vehicle constitutes a Fourth Amendment search. *State v. Jean*, 243 Ariz. 331, 341, ¶ 36 (2018). Such a search must be supported by probable cause and a warrant. *Id.*

**¶17**        Law argues that the search warrant permitting the attachment of GPS trackers to her vehicles was invalid because it was not supported by probable cause. Specifically, Law contends that Officer Pizzi improperly included the fact that officers found methamphetamine paraphernalia in Law's mother's home in his warrant affidavit. The superior court agreed

with Law that there was no clear nexus between the paraphernalia and Law. However, the court found that the anonymous tip, the CI's statement, and Law's criminal history were sufficient to establish probable cause for the GPS warrant. We agree.

**¶18** "Probable cause exists when the facts known to a police officer 'would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present.'" *State v. Sisco II*, 239 Ariz. 532, 535, ¶ 8 (2016) (citation omitted). Law's previous convictions for the sale of dangerous drugs, drug possession, and possession of drug paraphernalia contributed to the court's determination there was probable cause for the GPS warrant. Contrary to Law's argument, it is not improper to consider an individual's criminal history when determining whether to issue a warrant. *See State v. Woods*, 236 Ariz. 527, 530, ¶ 12 (App. 2015).

**¶19** Law's criminal history was only one of the factors that contributed to the court's determination. Officer Pizzi testified that an anonymous tip and statements by a "reliable confidential informant" supported his suspicion that Law was involved in drug trafficking. An informant's credibility is determined based on the totality of the circumstances. *See State v. Edwards*, 154 Ariz. 8, 12 (App. 1986). Officer Pizzi testified to the CI's reliability. The CI correctly identified Law's vehicle and had knowledge about her involvement with dangerous drugs. Officer Pizzi's investigation confirmed the CI's statements regarding Law's Hummer and involvement with drugs. This, in combination with the anonymous tip, led Officer Pizzi to believe the CI's statement that Law was involved in bringing methamphetamine into Yavapai County. On this record, we cannot say that the superior court erred in determining that the warrant was supported by probable cause.

**CONCLUSION**

**¶20** For the aforementioned reasons, we affirm.

