NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PRIDE RAYMOND BONDS, *Appellant*.

No. 1 CA-CR 25-0124

FILED 06-24-2026

Appeal from the Superior Court in Yavapai County
No.  P1300CR202000405
The Honorable Michael P. McGill, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Celeste Kinney
*Counsel for Appellee*

Zickerman Law Office, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

_____

**M O R S E**, Judge:

¶1          Pride Raymond Bonds ("Bonds") appeals his convictions for possession of methamphetamine and possession of drug paraphernalia. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          In February 2020, a narcotics officer obtained a search warrant and placed a GPS tracker on Bonds' truck because officers suspected he participated in drug crimes. About a week later, the GPS tracker indicated Bonds had visited locations in Phoenix and Glendale and was returning North on Interstate 17 into Yavapai County. The narcotics officer contacted two sheriff deputies patrolling in the area and asked them to attempt to stop Bonds' truck.

¶3          The deputies responded and saw Bonds' truck cross the shoulder line on the right side of the road by about a foot. The deputies stopped Bonds' truck after they saw the truck cross the shoulder line again about a quarter mile later.

¶4          A deputy approached the truck from the passenger side and identified Bonds as the driver. The deputy took Bonds' information and asked him to step out of the truck. Bonds walked to the deputy's car and sat on the guardrail while the deputy examined his driver's license and other paperwork. The deputy asked Bonds if he had anything illegal in his truck, which Bonds denied. Then the deputy immediately asked Bonds if he had anything illegal on his person. Bonds replied "Nope, sure isn't. Help yourself." The deputy asked if Bonds was consenting to a search and Bonds agreed. The deputy then told the narcotics officer that Bonds consented to a search and the officer told the deputy to wait for a drug-sniffing dog. While they waited, Bonds asked the deputies "What seems to be the problem?" Bonds did not object when the deputy said they were waiting for a drug-sniffing dog. The deputy also searched Bonds and found nothing on his person. While they waited, Bonds asked for permission to

smoke and asked the deputy to get cigarettes and a lighter from Bonds' truck.

¶5          The dog arrived about 21 minutes after the deputy spoke to the narcotics officer.  The dog handler led the dog around the truck, and the dog stuck its head through an open window.  The dog gave an alert, indicating the presence of drugs.  The deputies moved Bonds' truck to a nearby parking lot and searched it, finding a bag of methamphetamine. After impounding the truck, police also found an empty syringe.

¶6          The State indicted Bonds for sale or transportation of a dangerous drug and possession of drug paraphernalia.  Bonds moved to suppress the evidence seized from his truck, arguing that the deputies illegally stopped Bonds' truck and held him longer than necessary to complete a traffic stop.  In March 2023, the superior court held a hearing and denied the motion to suppress, finding the deputies had reasonable suspicion to stop Bonds and that after the stop, Bonds consented to a search and never revoked his consent.

¶7          Bonds filed a second motion to suppress, arguing that the drug-sniffing dog putting its head through the window of Bonds' truck constituted an illegal search.  After a hearing, the court denied the second motion, finding both that Bonds consented to any search and that the dog momentarily putting its head through the window was not a search.  Bonds then filed a third motion to suppress, arguing he never gave consent for a search of his truck.  After a hearing, the court denied the third motion.

¶8          Trial began in May 2024.  Just before the start of trial, the State requested to change the wording of the preliminary jury instructions to remove references to the sale of dangerous drugs, because the State only intended to prove Bonds transferred dangerous drugs. Bonds agreed to the change, provided the State would not deviate from its transfer theory during the trial.

¶9          At trial, the State called the police officers involved in the traffic stop and search of Bonds' truck.  The State also presented body camera footage from the officers and introduced the seized methamphetamine and syringe as evidence.  At the close of the State's case, Bonds moved for acquittal under Arizona Rule of Criminal Procedure ("Rule") 20.  The superior court denied Bonds' motion for acquittal on the possession of drug paraphernalia charge but granted the motion for acquittal on the transfer of methamphetamine charge.  The superior court stated that although the State had not proven transfer of

methamphetamine, the jury could consider possession of methamphetamine as a lesser included offense. Bonds objected, arguing that permitting the jury to consider possession violated the agreement that the State would not deviate from its transfer of methamphetamine theory. The superior court overruled the objection. Bonds rested his case and the jury began deliberating. The jury found Bonds guilty of possession of methamphetamine and possession of drug paraphernalia.

**¶10** After the verdict, Bonds moved for acquittal or a new trial under Rule 20, arguing the jury should not have been allowed to consider possession of methamphetamine as a lesser included offense of transfer of methamphetamine. The superior court denied Bonds' motion. Bonds appeals his convictions, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶11** Bonds argues the superior court erred by denying his motions to suppress and by allowing the jury to consider the lesser-included offense of possession of methamphetamine. We review the denial of a motion to suppress for an abuse of discretion. *State v. Angulo-Chavez*, 247 Ariz. 255, 258, ¶ 6 (App. 2019). We "consider only the evidence presented at the suppression hearing[] and view the evidence in a light most favorable to sustaining the ruling." *Id.* We review amending an indictment for abuse of discretion. *State v. Buccheri-Bianca*, 233 Ariz. 324, 329, ¶ 16 (App. 2013). We will affirm a discretionary ruling of the superior court "if it is legally correct for any reason." *State v. Leyva*, 241 Ariz. 521, 524, ¶ 6 (App. 2017).

## I. The First Suppression Motion.

### A. Basis for Traffic Stop.

**¶12** A "person shall drive a vehicle as nearly as practicable entirely within a single lane and shall not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety." A.R.S. § 28-729(A)(1). Law enforcement "may stop and detain a person as is reasonably necessary to investigate an actual or suspected [traffic] violation . . . ." A.R.S. § 28-1594. Under the Fourth Amendment, a law enforcement officer must possess a reasonable suspicion that a traffic violation has occurred to initiate a traffic stop. *State v. Majalca*, 251 Ariz. 325, 328, ¶ 12 (App. 2021). "An officer who has observed a traffic violation has reasonable suspicion to initiate a traffic stop." *Id.*

**¶13**		Bonds argues the deputies lacked a lawful basis to stop his truck. He asserts that under *State v. Livingston*, crossing the shoulder line a couple of times is not enough to justify a traffic stop. 206 Ariz. 145, 148, ¶ 10 (App. 2003). In *Livingston*, a police officer stopped a driver because her right-side tires crossed the shoulder line once. *Id.* at 147, ¶ 4. The officer noted that this happened on a "rural, curved, and dangerous" section of road, that the driver did not "'jerk[]' her vehicle or over-correct" after crossing the shoulder line, and that the deviation did not affect other traffic. *Id.* at ¶ 5. This Court affirmed the superior court's finding that the officer lacked a reasonable basis for a stop because the driver had not committed a traffic violation. *Id.* at 148, ¶ 12.

**¶14**		This case is distinguishable from *Livingston*. In *Livingston*, the Court concluded that an "alleged isolated and minor breach of the shoulder line" did not constitute a traffic violation when the driver "otherwise drove safely on a dangerous, curved road." *Id.* Here, Bonds' departure from his lane occurred on an interstate, not a rural road. And the deputy testified that the road where Bonds crossed the shoulder line was straight, not curved and dangerous. Further, Bonds crossed the lane line twice. Unlike the "isolated and minor breach of the shoulder line" in *Livingston*, *id.*, Bonds' repeated crossing of the shoulder line constituted a "continued violation of the statute," *State v. Alvarez-Soto*, --- Ariz. ---, ---, ¶ 21, 579 P.3d 1227, 1232 (2025). The superior court did not abuse its discretion by concluding the deputies legally stopped Bonds.

### B.		Length of Traffic Stop.

**¶15**		The duration of a traffic stop may not extend past the time necessary to "effectuate the purpose of the traffic stop or any related safety concerns." *Angulo-Chavez*, 247 Ariz. at 258, ¶ 7. Once the original purpose of the traffic stop is complete, the law enforcement officer must allow the driver to leave unless the encounter becomes consensual, or the officer develops a reasonable suspicion the driver is engaged in illegal activity. *Id.* An encounter is consensual, not a seizure, if, under the circumstances, a reasonable person would believe he was free to leave. *See State v. Gonzalez*, 235 Ariz. 212, 214, ¶ 8 (App. 2014) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

**¶16**		Bonds argues the deputies unlawfully prolonged the traffic stop without his consent and without reasonable suspicion that he was engaged in criminal activity. The superior court dismissed this argument, finding the prolonged stop was a consensual encounter. We agree.

**¶17** Bonds argues on appeal that he did not give consent, as "[e]videnced by [Bonds'] brief answers to officer questions, failure to initiate conversation, inquiry into what problem was prolonging the stop, and expression that he was on his way to pick up his son in Prescott." But Bonds never asked to leave. And the superior court watched the body camera footage and noted that Bonds appeared "comfortable" during the stop and "offer[ed] up information when asked freely," suggesting he consented to the stop. We must defer to the superior court's assessment of video evidence, *Alvarez-Soto*, 579 P.3d at 1234, ¶¶ 32-34, witness credibility, and conflicting testimony, *Angulo-Chavez*, 247 Ariz. at 259, ¶ 10. The superior court did not abuse its discretion in finding that the stop became a consensual encounter after Bonds agreed to allow a search.

## II. The Second and Third Suppression Motions.

**¶18** The Fourth Amendment requires law enforcement officers to obtain a warrant before conducting a search, "unless one of a few well-established exceptions applies." *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 10 (2016). Consent is an exception to the Fourth Amendment's warrant requirement. *Id.* at ¶ 11. "The state must prove voluntary consent by a preponderance of the evidence." *Id.* at 302–03, ¶ 11. "A general consent to search is unqualified, absent any announcement of the object of the search or other express limitation, subject only to the bounds of reasonableness." *State v. Becerra*, 239 Ariz. 90, 92, ¶ 9 (App. 2016).

**¶19** Bonds moved to suppress the evidence seized at the traffic stop twice more. Both motions dealt with whether the deputies illegally searched Bonds' truck. In the second motion, Bonds argued the dog putting its head through the window of the truck constituted an illegal search. The superior court denied the motion, finding both that Bonds consented and that the dog momentarily putting its head through the window did not constitute a search. In the third suppression motion, Bonds argued the deputies did not have Bonds' consent to search his truck. The superior court disagreed and denied the motion to suppress. We find no abuse of discretion.

**¶20** We defer to the superior court's factual findings when they are supported by the record. *Alvarez-Soto*, 579 P.3d at 1234, ¶ 31. The record here supports the superior court's finding that Bonds consented to the search of his truck. Bonds told the deputy he did not have anything illegal in his truck or on his person, and that the deputy could "help [him]self." The deputy confirmed Bonds was consenting to a search. Bonds suggests he only consented to a search of his person and not his truck, but Bonds

never specified any limit on the consent he gave to the deputy. And when Bonds asked the deputy "what seems to be the problem," the deputy explained they were waiting for a drug-sniffing dog to check his truck. Bonds did not object or tell the deputy he had not consented to a search of the truck. And after the deputy searched his person, Bonds continued to wait with the deputies and never asked to leave. Instead, while waiting for the dog, Bonds asked the deputy to get his cigarettes from the truck and had no problem with the deputy going through his truck to find them. All of this supports the superior court's conclusion that Bonds voluntarily consented to a search of his truck. The superior court did not abuse its discretion by denying the second and third motions to suppress.

## III. Amendment of the Charges.

¶21 Bonds argues the superior court abused its discretion by allowing the jury to consider whether Bonds was guilty of possession of methamphetamine after the superior court granted Bonds' Rule 20 motion on transfer of methamphetamine. A charge may only be amended absent a defendant's consent "to correct mistakes of fact or remedy formal or technical defects." Ariz. R. Crim. P. 13.5(b). "An amendment corrects a formal or technical defect, and is therefore permissible, if it does not change 'the nature of the offense charged or prejudice[ ] the defendant in any way.'" *State v. Fimbres*, 222 Ariz. 293, 303, ¶ 38 (App. 2009) (quoting *State v. Sanders*, 205 Ariz. 208, 214, ¶ 19 (App. 2003), *abrogated by State v. Freeney*, 223 Ariz. 110, (2009)). The superior court's amendment here neither changed the nature of the offense nor prejudiced the defendant. "An offense specified in an indictment, information, or complaint is a charge of that offense and all necessarily included offenses." Ariz. R. Crim P. 13.1(e). Possession of methamphetamine is a lesser included offense of transfer of methamphetamine. *See State v. Cheramie*, 218 Ariz. 447, 449, ¶ 22 (2008). In *Cheramie*, our supreme court explained that "one cannot transport drugs without possessing them." *Id.* at 449, ¶ 12. Similarly, one cannot transfer drugs without possessing them. Under Rule 13.1(e), "the defendant is on notice from the beginning of the proceedings against him that the jury may be asked to consider any lesser included offenses supported by the trial evidence." *State v. Gipson*, 229 Ariz. 484, 487, ¶ 14 (2012). Bonds argues that his agreement with the State before trial that the State would only present evidence to support a theory that Bonds transferred the drugs and not that Bonds sold the drugs precluded consideration of the lesser included offense. But the State's agreed transfer theory still required possession, so his argument is unavailing.

¶22   Additionally, the superior court properly instructed the jury on possession. Under Rule 21.4, "[o]n request by any party and if supported by the evidence, the court must submit forms of verdicts to the jury for . . . all offenses necessarily included in the offense charged." Ariz. R. Crim. P. 21.4(a)(1). The State asked for a lesser included offense instruction on possession in its requested jury instructions. Bonds argues that the superior court could not give this instruction, however, because after the superior court granted his Rule 20 motion, sale or transportation of methamphetamine ceased to be a charged offense. But Bonds offers no authority for this contention. Bonds has shown no abuse of discretion in allowing the jury to consider the lesser included offense of possession of methamphetamine.

## CONCLUSION

¶23   We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:  JR