739 P.2d 1325

**STATE of Arizona, Appellee,**

v.

**Larry Frank EDWARDS, Appellant.**

**1 CA–CR 9081.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 26, 1986.

Reconsideration Denied March 10, 1987.

Review Denied July 14, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., and Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Winters & Greer by Charleen Greer, Holbrook, for appellant.

## OPINION

GREER, Judge.

Appellant was charged by information with one count of conspiracy, pursuant to A.R.S. § 13–1003, three counts of burglary, pursuant to A.R.S. § 13–1507, two counts of theft, pursuant to A.R.S. § 13–1802, and one count of trafficking in stolen property, pursuant to A.R.S. § 13–2307. Prior to trial, the state alleged that all counts were to be treated as prior convictions to one another, under A.R.S. § 13–604 and *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980). Appellant and his co-defendant, Robert Hughes, elected to go to trial. After a two-week trial, the jury found both defendants guilty as charged. Appellant was sentenced to three mitigated terms of three and three-quarter years on the conspiracy count, on one theft count and on one burglary count. Appellant was also sentenced to two mitigated terms of five years on repetitive offense burglary and theft counts, and to a mitigated term of five and one-quarter years on a class 2 felony theft and trafficking charge. All sentences were to be served concurrently and credit was given for thirty-nine days presentence incarceration. Appellant filed a timely notice of appeal.

The facts, taken in a light most favorable to sustaining the verdict, are as follows. Appellant, a Navajo County resident, burglarized three residences in Apache County between June 26, 1983 and July 1, 1983. On August 22, 1983, police officers from jurisdictions both in Navajo and Apache counties served a search warrant on both Edwards' and Hughes' home. Subsequent search warrants were executed on August 24, 1983 and September 2, 1983. At trial, the burglary victims testified that property seized during the search warrants was the property stolen from their homes. Various police officers also testified as to tire tracks found at the scene of the crimes compared to tires found on appellant's truck, and footprints found at the scene of one crime matching a pair of boots found at co-defendant Hughes' residence.

On appeal, appellant raises the following issues:

1. Was appellant denied the effective assistance of counsel?

2. Did the trial court improperly deny appellant's motion to suppress the evidence of the August 22, 1983 search?

3. Is Rule 9.3 of the Arizona Rules of Criminal Procedure unconstitutional as applied in this case?

### INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, appellant claims that he was denied the effective assistance of counsel in two particular circumstances. First, appellant alleges that he was denied the effective assistance of his first attorney who represented him at his first preliminary hearing. Second, appellant claims that he was denied effective assistance by his second attorney who represented him throughout the trial.

The effectiveness of counsel's representation is determined by whether counsel's performance was reasonable under the circumstances and whether there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222,

227 (1985), *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984). In the first instance, appellant's counsel at the preliminary hearing stage failed to understand the necessity of an offer of proof at a preliminary hearing, under Rule 5.3(a), Arizona Rules of Criminal Procedure, showed distinct signs of being unprepared, was clearly incorrect as to the scope of cross-examination by the state, and called her client to testify on the stand in a situation where few attorneys would choose such a tactic. The state, in its brief, concedes that counsel for appellant made several errors and used tactics not likely to be utilized by reasonably competent counsel. Viewing these errors as a whole, it is clear that appellant received assistance below the standard provided by reasonably competent counsel, especially in regard to the errors of "black letter" law. *See State v. Smith*, 136 Ariz. 273, 279, 665 P.2d 995, 1001 (1983).

Appellant also claims that his new counsel at trial failed to properly prepare his case. Specifically, before the appellant took the stand in his own behalf, counsel failed to advise his client that appellant could be cross-examined on the testimony he gave at the preliminary hearing. It is evident from the transcript that the appellant was not advised of this potential cross-examination and was not provided with an opportunity to review his previous testimony. At trial, appellant was obviously surprised when he was questioned about his previous testimony and incorrectly claimed that he had never previously testified in this matter. On closing argument, appellant's trial counsel was left with the problem of explaining not only the inconsistencies between appellant's trial testimony and his preliminary hearing testimony, but also why appellant could not recall that he had previously testified under oath. The problems created were due to ineffective assistance of counsel. Just as it is unreasonable not to interview trial witnesses in general, *State v. Radjenovich*, 138 Ariz. 270, 274, 674 P.2d 333, 337 (App.1983), it is also clearly ineffective assistance not to properly prepare the accused as to the possibility

of cross-examination on previous sworn testimony. *See also, State v. Hein*, 138 Ariz. 360, 674 P.2d 1358 (1983).

█ It does not necessarily follow, however, that appellant is entitled to relief. Apart from the inadequacy of counsel's conduct, appellant must also show that had counsel been adequate that it is reasonably probable that there would have been a different result at trial. *State v. Lee, supra,* at 214, 689 P.2d at 157. The benchmark for judging a claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *State v. Tapia*, 151 Ariz. 62, 63, 725 P.2d 1096, 1097, (1986), quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984). Under the circumstances of this case, appellant has failed to show that, but for the errors of his counsel, there is a reasonable probability that he would not have been convicted. First, while the state's case was based entirely on circumstantial evidence, there was a great quantum of such evidence. The state introduced over thirty items taken from either appellant's or his co-defendant's home and each of these items was identified by one or more of the burglary victims as their personal property. As to the items themselves, it must be noted that many of these items are distinctive household goods, as opposed to more fungible items like cash. Second, the state presented other evidence in the form of tracks and footprints also placing appellant and his co-defendant at the scene of the burglaries. While an expert witness stated that the tire tracks were inconclusive, the identification of the tire tracks and footprints added to the weight of the evidence against the appellant. "A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *State v. Tapia, supra,* at 65, 725 P.2d at 1099, quoting *Strickland v. Washington, supra,* at 696, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. Even if appellant's own testimony had not been impeached by the combined problem of an unnecessary cross-examination at the preliminary hearing and appellant's unpreparedness to explain his prior inconsistent statements, the case against him was very strong. Apart from calling character witnesses in his defense, appellant called many other witnesses who testified that they had seen specific items alleged to be stolen in the appellant's possession prior to the time of the burglaries. This was directly and strongly contradicted by very convincing evidence from the victims who identified the property as their own. We are convinced beyond a reasonable doubt that the appellant would have been convicted even if his attorneys had not made the errors they did. We therefore find the errors made by appellant's counsel to be harmless error.

## MOTION TO SUPPRESS

Prior to trial, the appellant moved to suppress the results of the August 22, 1983 search. While no evidence was seized during this search, appellant contended that this search was the basis for two subsequent searches where evidence was gathered.

The search was carried out as a joint operation between various police departments from Navajo and Apache counties. The warrant itself was secured by Apache County officers in a Navajo County justice court. The affidavit prepared for that search warrant recited that one of the burglary victims discovered her property among the wares of a roadside peddler. The affidavit further stated that the victim of the crime recognized the dishes by certain marks. The peddler told officers where he bought the dishes and showed them the house. The affidavit also cited eight items to be seized. At the time the warrant was served, the victims of the burglary went along to aid in the identification of their property. They were led by officers through the appellant's residence to help identify stolen property.

### Adequacy of Affidavit

On appeal, appellant contends that the affidavit gave insufficient information re-

garding the identification of the stolen property. Specifically, appellant claims that the affidavit failed to specifically state what kind of marks the burglary victim recognized on her dishes and did not present the magistrate with sufficient information to justify a finding of probable cause.

■ Affidavits are to be interpreted in a commonsensical and realistic manner, looking at the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). *See also, State v. Ault*, 150 Ariz. 459, 467, 724 P.2d 545, 553 (1986) *citing State ex rel. Collins v. Superior Court*, 129 Ariz. 156, 158, 629 P.2d 992, 994 (1981). Search warrants are presumed to be correct and should not be invalidated by a hypertechnical interpretation when a magistrate has probable cause to issue the warrant. Doubtful or marginal affidavits should be considered in light of the presumption of validity accorded search warrants. Looking at the circumstances here, a further description of the marks on the dishes would not have materially aided the magistrate in making his probable cause determination. The information provided by the affidavit shows the victim had made a reasonable claim of ownership based upon observable and verifiable facts. Such information provided the magistrate with sufficient probable cause to justify the issuance of the search warrant.

Appellant also contends that the affidavit was insufficient because the peddler who possessed the stolen goods was not established as a reliable informant, citing *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinnelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The two-prong test of *Aguilar* and *Spinnelli* cited by appellant requires that the affidavit include facts from which the magistrate can determine that the conclusions of the affiant are warranted. It also requires information from which the magistrate can find the informer's information is reliable and that the informer is credible. Strict application of that test was replaced by the "totality of

circumstances" enunciated in *Illinois v. Gates, supra; see also, Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). (*Gates* requires that substantial deference be given to magistrate's determination). An affidavit is sufficient if the issuing magistrate is able to make a common-sense decision that probable cause exists given all the circumstances before him. A deficiency in one of the prongs may be compensated for by a strong showing in support of the other. If the reviewing court can determine that the magistrate had a "substantial basis" for his finding then the warrant was properly issued. *Gates, supra*, at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 549.

■ The Arizona Supreme Court noted in *Gates* that probable cause for the issuance of a search warrant exists where the facts and circumstances presented to the magistrate are based on personal knowledge or trustworthy information sufficient to warrant a person of reasonable caution to believe that seizable items are located on the premises to be searched. *State v. McCall*, 139 Ariz. 147, 156, 677 P.2d 920, 929 (1983). Distinctions have been drawn between those individuals who provide information for profit or favor and those who provide information voluntarily to police officers. *State v. Summerlin*, 138 Ariz. 426, 431, 675 P.2d 686, 691 (1983). Evidence showed that the peddler had lived in this rural area over a four-year span with no indication of any involvement in nefarious activity. While it is true that the peddler might have had a motive in exculpating himself, we do not believe that such was so strong as to render the warrant defective while one in possession of stolen property might seek to cast the blame elsewhere by giving a plausible explanation as to how he came into possession of the goods there is nothing about disclosing the defendant as the source of the goods in this case that necessarily deflects all the blame from the peddler. In addition, the information given by the peddler was so verifiable or refutable, that there was little profit in the peddler's lying about the source of the goods to the police. We find that under the "totality of the circumstances" present-

ed, the affidavit gave sufficiently trustworthy information to allow the magistrate to properly issue a warrant.

### Pretextual Search

■ Appellant also contends that the warrant was a pretext for a general search to look for property from unrelated burglaries. Appellant's claim is not persuasive. The record in this case shows that the other items observed in the Edwards' residence were in plain view and were readily observable by anyone present. *See State v. Superior Court,* 136 Ariz. 78, 664 P.2d 228 (App.1983). Appellant's claim that the search was not limited to areas where the items were likely to be found is also without merit on this record. The items listed are generally small pieces of personal property which could be found almost anywhere within the appellant's residence. As an example, the warrant lists items such as "one wash basin, white with pink flowers," plus tools and other household items. Clearly such items could be located almost anywhere within appellant's home and a thorough search of the residence was within the scope of the warrant.

### Search by Burglary Victims

[5] As appellant's final search related contention, he claims it was improper to have the victims of the burglaries brought to the search to identify property stolen from their houses. During the August 22 search, only one of the burglary victims accompanied the police as they searched.

There is nothing impermissible, under properly controlled circumstances, with bringing individuals who can identify property to the scene of a search to aid police officers. *State v. Scigliano,* 120 Ariz. 6, 583 P.2d 893 (1978). *See also* A.R.S. § 13–3916(A). In *Scigliano,* an informant was brought to the search to recognize stolen items she had illegally sold to the accused. In the present case, the persons brought to the scene of the search were the victims of the crimes, who could best identify their property and save unnecessary disruption of appellant's home through the inadvertent seizure of property which appeared to be property described in the warrant.

### Good Faith

■ Finally, as to all of appellant's claims of improper scope and procedure in this search, the record also clearly establishes that such actions were taken in good faith. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Not only did the officers in this matter act in reasonable reliance of the warrant issued, but took further precautions to assure that the search was conducted under proper procedures. When they found items in appellant's home not specifically sought under the first search warrant the officers secured the residence but did not seize *any* property at that time. Instead they sought new warrants, further specifying not only items mentioned in connection with other burglaries but also mentioning that the victims had identified property at the scene. Under the circumstances, the trial court was correct in denying the motion to suppress.

### EXCLUSION OF WITNESSES

Prior to the start of trial, the trial judge asked each side if it wished to invoke Rule 9.3, Arizona Rules of Criminal Procedure, which allows for the exclusion of witnesses. At that point in the proceedings, neither side requested that witnesses be excluded. After the state had finished presenting its case, the state requested that witnesses be excluded from that point onward. Counsel for appellant objected, claiming that the state had to provide a reason for invoking the rule. Counsel for appellant's co-defendant also objected on the basis of fairness. The court, after considering the objections, excluded all witnesses. Appellant now claims that he was denied a fundamental due process right to a fair trial by the late exclusion of witnesses, citing *State v. Roberts,* 126 Ariz. 92, 612 P.2d 1055 (1980) and *State v. Radi,* 168 Mont. 320, 542 P.2d 1206 (1975).

The general purpose of the rule is to prevent fabrications and preserve individual testimony. Sequestration of witnesses

under Rule 9.3 is mandatory upon request by one of the parties. *Roberts*, 126 Ariz. at 94, 612 P.2d at 1057. There is no general rule that exclusion must be demanded at a particular time or the availability diminishes. 6 Wigmore, Evidence § 1840 (Chadbourne rev. 1976). ("It need not be demanded at the very opening of the testimony; at any time later, when the supposed exigency arises, the order may be requested.") *See also, Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 714 (6th Cir. 1975), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975).

■ Appellant's contention seems to be on the more narrow issue of whether the right to invoke the rule is waived if a party fails to assert the rule when the court asks if the rule is to be invoked. The argument has some merit. It seems unfair to allow a party to invoke the rule after initially specifically saying that he will not do so. If we were convinced that the state had intentionally deceived or "sandbagged" defense counsel, our result here would likely be different. But upon examination of the trial transcripts, we find the state to have made a good faith request to invoke the rule pursuant to a dispute over disclosure of witnesses. The record shows that the state learned for the first time during trial that certain defense witnesses were going to testify to *substantive evidence* as well as to character evidence. We therefore find that invocation of the rule was proper under these facts, and that the request was properly made "when the supposed exigency arose," thus negating any blatant unfairness.

Appellant has also failed to show that honoring the state's exclusionary request denied him due process. Appellant's citation to *State v. Roberts, supra,* does not support his proposition. In *Roberts,* the trial court erred by denying defense counsel's motion to invoke the rule during the cross-examination of one of the prosecution's witnesses. *Roberts* did not deal with situations involving the granting of the request and does not support appellant's position. Appellant's citation to *State v. Radi, supra,* is likewise unfounded. In *Radi* the trial court granted the defendant's request to exclude witnesses but allowed certain police officer witnesses to remain in the courtroom. Like *Roberts, Radi* stands for the proposition that the trial court must properly honor any request for the exclusion of witnesses.

Further, appellant has failed to show how he was denied his fundamental due process right to a fair trial. There is no fundamental right to have all defense witnesses hear each other's testimony and testify consistently. Appellant did have the right to invoke the rule and exclude the state's witnesses to assure they would not hear each other's testimony. However, even when the trial court gave appellant that opportunity at the start of trial, appellant's counsel failed to request exclusion.

For the foregoing reasons, the conviction and sentence are affirmed.

CORCORAN and KLEINSCHMIDT, JJ., concur.