NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHARLES EUGENE SMITH, *Appellant.*

No. 1 CA-CR 14-0168
FILED 5-28-2015

Appeal from the Superior Court in Mohave County
No. S8015CR201200284
The Honorable Derek C. Carlisle, Judge
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge Michael J. Brown joined.

**G E M M I L L**, Judge:

¶1        Charles Eugene Smith appeals his convictions and sentences for manufacture of dangerous drugs, possession of drug paraphernalia, and misconduct involving weapons.  For the following reasons, we affirm.

## BACKGROUND

¶2        On December 19, 2011, a known, confidential informant contacted the police department to report that "Charles Smith" had told the informant that Smith was making "meth" in his fifth-wheel.  The informant claimed that he had been inside Smith's fifth-wheel where he saw several empty boxes of pseudoephedrine and a soda bottle containing a two-stage liquid.  The informant also indicated that Smith said he had enough material in the soda bottle to produce three grams of methamphetamine.

¶3        After this report, police detectives, with the informant, drove to and observed Smith's trailer.  The detectives also confirmed from public records that a "Charles Smith" lived at the address.  In his affidavit in support of a search warrant, Officer E.B. explained that the informant had, on "over 20 occasions in the past four years," provided verified, true information to the police department.  As a result, Officer E.B. believed the informant was reliable.

¶4        Two days later, Officer E.B., as part of his application for a search warrant, filed an affidavit of probable cause for a search of the fifth-wheel and surrounding outbuildings with the Mohave County Superior Court.  Relying on Officer E.B.'s probable cause affidavit, a superior court judge (hereinafter "the magistrate")[1] issued a "no-knock" search warrant for the fifth-wheel trailer, outbuildings, and Smith's Dodge pickup truck.  The subsequent search revealed multiple items associated with drug use and manufacturing, including a coffee grinder and funnels containing pseudoephedrine residue, an HCL generator, tubing connected to the generator that contained meth crystals, and a vial containing 0.16 grams of methamphetamine.  Police also found a functional semi-automatic pistol in a cupboard.

---

[1]  Mohave County Superior Court Judge Derek Carlisle heard Smith's case in Superior Court.  Because Judge Carlisle was the judge who issued the search warrant, the motion to suppress was transferred to Judge Steven Conn for resolution.

**¶5** Later that day, police officers performed a traffic stop of Smith's truck at a local convenience store. Inside the truck were two containers of lye, a chemical used in the manufacture of meth. Officer E.B., who was involved in the traffic stop, took Smith to the Highway Patrol office for an interview. During the interview, Smith admitted he lived in the fifth-wheel trailer, but denied ever making meth or having used meth in at least six months. Although he was wearing a holster at the time of the police interview, Smith also denied owning a gun. Smith was subsequently arrested.

**¶6** A jury convicted Smith of one count of manufacturing a dangerous drug and one count of possession of drug paraphernalia, as well as misconduct involving a weapon. The court later entered judgment and imposed a mitigated six-year prison sentence for the manufacturing offense, 323 days for the possession offense, and a one year sentence for the weapons conviction. The sentences for the drug counts were ordered to run concurrently, but the weapons misconduct sentence was consecutive to those. Smith was also given credit for 323 days of presentence incarceration.

**¶7** Smith timely appeals his convictions and sentences. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**DISCUSSION**

I.      Motion to Suppress Evidence

**¶8** Smith argues that the trial court erred when it denied his motion to suppress evidence based on what he contends was an unlawful search and seizure. Prior to trial, Smith filed a motion to suppress the evidence found in the search of his fifth-wheel trailer, claiming that the warrant issued was not supported by probable cause. The court denied his motion and admitted the evidence found as a result of the search.

**¶9** We review the court's denial of a motion to suppress for an abuse of discretion. *State v. Crowley*, 202 Ariz. 80, 83, ¶ 7, 41 P.3d 618, 621 (App. 2002). We also presume the validity of a search warrant, granting deference to the decision of the issuing magistrate. *State v. Hyde*, 186 Ariz. 252, 272, 921 P.2d 655, 675 (1996). "Doubtful or marginal affidavits should be considered in light of the presumption of validity accorded search warrants." *State v. Edwards*, 154 Ariz. 8, 12, 739 P.2d 1325, 1329 (App. 1986).

Accordingly, the burden of proving that a warrant was invalid lies with the defendant. *Crowley*, 202 Ariz. at 83, ¶ 7, 41 P.3d at 621.

**¶10** Under both the United States and Arizona Constitutions, a search warrant may issue only when supported by probable cause. U.S. Const. amend. IV; Ariz. Const. art. 2, § 8. The United States Supreme Court has explained that a determination of probable cause requires a magistrate to make a "practical, common-sense decision" regarding whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Prior to the Supreme Court's decision in *Illinois v. Gates*, courts followed a rigid test to determine whether an informant's tip was sufficient to give rise to probable cause. *Id.* The test required the court to consider as independent elements the "veracity, reliability, and basis of knowledge" of an informant's tip to police. *Id.* at 230. A deficiency in one element could not be overcome by sufficient evidence of another. *Id.* at 230 n.5.

**¶11** Recognizing the inflexibility of such a test, *Gates* abandoned it and held that probable cause determinations are dependent on the totality of the circumstances giving rise to suspicion. *Id.* at 238; *see also Crowley*, 202 Ariz. at 85, ¶ 13, 41 P.3d at 623 (explaining that *Gates* established a "less mechanistic approach to determining probable cause"). To decide whether probable cause exists, the magistrate must examine "all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of [the informant's] knowledge.'" *Id.* at 238; *see also State v. Buccini*, 167 Ariz. 550, 556, 810 P.2d 178, 184 (1991) (adopting *Gates*).

**¶12** Smith points to three reasons he claims the supporting affidavit was insufficient to give rise to probable cause. We examine each in turn.

A. Specificity of Information

**¶13** Smith's first claim is that the information given by the confidential informant was not specific enough to show probable cause. When a party challenges a magistrate's determination of probable cause, it is the job of a reviewing court to determine, based on the totality of the circumstances presented in the affidavit, that there was a "substantial basis" on which to conclude that probable cause existed. *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). We review the trial court's denial of a motion to suppress for an abuse of discretion.

*State v. Mendoza-Ruiz*, 225 Ariz. 473, 475, ¶ 6, 240 P.3d 1235, 1237 (App. 2010).

**¶14**          We conclude that the trial court did not abuse its discretion in denying the motion to suppress because there was a substantial basis to conclude that probable cause existed in this case. The informant stated that he was with Smith in his fifth-wheel, where he observed materials used for making meth. This information is sufficiently specific to allow a reasonable person to determine that there is a fair probability that evidence of a particular crime will be found in a particular place. *See Gates*, 462 U.S. at 238. Smith argues that there is no evidence the informant knew that empty pseudoephedrine boxes and soda bottles with two-stage liquids inside were indicators of drug manufacturing. Even if true, the absence of information in the affidavit that the informant knew that what he saw were indicators of drug manufacturing does not make the probable cause statement insufficient; the investigating officer knew from his own experience that such materials are often indicative of narcotics labs. Furthermore, the informant stated that Smith admitted he was using the materials to manufacture meth and that he had enough supply to make three grams of the drug. Examining all of the facts outlined in the affidavit, we conclude that it was sufficiently specific, and the court had sufficient information to believe that there was a fair probability that evidence of drug manufacturing would be found in Smith's fifth-wheel.

B.          Reliability of the Confidential Informant

**¶15**          Smith next contends that the probable cause affidavit did not adequately set forth the reliability of the confidential informant. As the basis of the informant's reliability, the investigating officer stated that the informant had worked with police for four years and given more than 20 verified tips. Smith argues that because it fails to establish that the informant had given verified tips regarding specific criminal activity in particular, the affidavit lacked a sufficient basis for the conclusion that the informant was reliable.

**¶16**          Although the officer's affidavit did not indicate whether the informant's past 20 tips led to arrests or seizures of narcotics, *see People v. Mason*, 132 Cal. App. 3d 594, 599 (Cal. Ct. App. 1982) (holding an affidavit insufficient when it stated that an informant made controlled drug buys, but never stated that the informant gave relevant information to the police), *Gates* requires a common-sense, rather than a technical interpretation of a warrant affidavit, *Gates*, 462 U.S. at 238. Under the Gates analysis, it was

not unreasonable for the trial court to conclude that the informant's history of providing tips, which were "verified as true and correct," was sufficient to establish the informant's reliability. *See State v. McCall*, 139 Ariz. 147, 156–57, 677 P.2d 920, 929–30 (1983) (allowing the court to draw reasonable conclusions from facts given, even when those conclusions were not expressly stated by the warrant affidavit).

¶17　　　　Additionally, the informant was not an anonymous, unknown informant. The confidential informant was known to the police and had a four-year history of working with the investigating detectives. He also went with the detectives to verify the address and location of Smith's trailer, giving the officers an in-person opportunity to assess his honesty and the veracity of the tip. We therefore conclude that the trial court did not abuse its discretion by denying the motion to suppress because the affidavit and surrounding circumstances were sufficient to establish the reliability of the confidential informant. *See Edwards*, 154 Ariz. at 12–13, 739 P.2d at 1329–30 (upholding determination of probable cause despite questions surrounding an informant's reliability).

### C.　　Police Corroboration

¶18　　　　Finally, Smith argues that the tip was not sufficiently corroborated. When detectives went to confirm the information given them by the confidential informant, they verified the address and location of the fifth-wheel and that a man named Charles Smith lived there. They did not, however, verify any incriminating information. Smith therefore argues that probable cause did not exist.

¶19　　　　In *Gates*, the Supreme Court recognized the value of independent police corroboration to prove the veracity and reliability of an anonymous tip. 462 U.S. at 242–43. As *Gates* emphasized, however, corroboration of a tip is simply one of the many factors a court should consider when determining whether an informant's tip gives rise to probable cause. *Id.* at 246 (explaining that the level of corroboration of the tip in that case may not have satisfied the more rigid test). And even before *Gates* adopted the totality-of-the-circumstances rule, this court recognized that it is not necessary to verify all the information in a tip, including incriminating details, even when the tip by itself is not detailed enough to give rise to probable cause. *State v. Watkins*, 122 Ariz. 12, 15, 592 P.2d 1278, 1281 (App. 1979) ("An undisclosed informant's tip found wanting . . . may provide the basis for a finding of probable cause if parts of it have been corroborated by independent sources."). When, as here, the tip contains

"observable and verifiable facts" that are sufficiently detailed, verification of all the facts contained therein is not required to validate the warrant. *See Edwards*, 154 Ariz. at 12, 739 P.2d at 1329. As a result, establishing probable cause did not depend on additional corroboration of details of criminal activity.

¶20 Based on our review of the affidavit and record, we agree that under the totality of the circumstances, the magistrate had enough reliable information to determine there was probable cause to issue a search warrant for Smith's fifth-wheel. The trial court, as a result, did not abuse its discretion when it denied Smith's motion to suppress.[2]

II. Consecutive Sentences

¶21 Smith also argues that the trial court erred by imposing consecutive, rather than concurrent, sentences for his conviction of misconduct involving weapons and felony drug charges. Because Smith did not object at sentencing, we review for fundamental error. *State v. Henderson,* 210 Ariz. 561, 567–68, ¶¶ 19–20, 115 P.3d 601, 607–08 (2005). An illegal sentence constitutes fundamental error. *State v. McDonagh*, 232 Ariz. 247, 248–49, ¶ 7, 304 P.3d 212, 213–14 (App. 2013).

¶22 For possessing a gun during the commission of a felony, the jury also convicted Smith of misconduct involving weapons under A.R.S. § 13-3102(A)(8). For that conviction, the court imposed a mitigated one-year sentence to be served consecutively to the sentences imposed for the felony drug convictions. Smith argues that the consecutive sentence violates A.R.S. § 13-116, which prohibits imposing multiple punishments for the same act:

> *An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.* An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require.

---

[2] Smith also argues that the trial court erred in determining that the good-faith exception justified the search. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *State v. Hyde*, 186 Ariz. 252, 273, 921 P.2d 655, 676 (1996). Because we hold that the warrant was facially valid, we need not determine whether the good-faith exception applies.

(Emphasis added.)  Smith asserts that because manufacturing drugs and possessing a weapon while manufacturing drugs constitute a single act, it was error to impose consecutive sentences.

**¶23**      In *State v. Gordon*, 161 Ariz. 308, 312, 778 P.2d 1204, 1208 (1989), the Arizona Supreme Court explained the framework for determining when a set of facts involving multiple convictions constitutes a "single act."  Prior to *Gordon*, the court followed a rigid "identical elements test" to decide whether two acts were distinguishable from one another.  *Id.*  Under that test, the court eliminates the evidence supporting one charge, then determines whether the evidence remaining is sufficient to support the elements of the other charge.  *Id.*  If there is sufficient evidence remaining to support conviction under the second charge, the crimes constitute different acts and consecutive sentences are permissible.

**¶24**      In *Gordon*, however, our supreme court acknowledged that the identical elements test was both difficult to apply and sometimes led to inconsistent results.  *Id.*  Accordingly, the court articulated two other factors for consideration when determining what constitutes a single act under A.R.S. § 13-116.  In addition to the identical elements test, a trial court should also decide whether it is factually possible to commit the ultimate crime without committing the lesser crime.  *Id.* at 315; 778 P.2d at 1211.  If so, the crimes more likely constitute different acts.  Finally, a court should consider the nature of the danger or harm imposed by the two crimes.  *Id.* at 314, 778 P.2d at 1210.  When the lesser charge is intended to prevent a harm distinct from and additional to that addressed by the underlying crime, the two crimes are likely different acts.  *Id.*; *State v. Cotten*, 228 Ariz. 105, 109, ¶ 12, 263 P.3d 654, 658 (App. 2011).

**¶25**      This court previously applied the *Gordon* test to uphold consecutive sentences for felony drug charges and misconduct involving weapons.  In *State v. Siddle*, 202 Ariz. 512, 518, ¶ 18, 47 P.3d 1150, 1156 (App. 2002), this court applied the three *Gordon* factors and determined that consecutive sentences for felony drug charges and misconduct involving weapons under A.R.S. § 13-3102(A)(8) did not violate § 13-116.  Even though the evidence presented to support the two charges did not pass the identical elements test, the other two *Gordon* factors were satisfied:  (1) it is possible to commit a felony drug offense without committing weapons misconduct, and (2) the harm posed by possessing a weapon during the commission of a felony drug offense is distinct from that posed by the drug offense itself.  *Id.*  Accordingly, the court upheld the consecutive sentences. *Id.*

**¶26** We believe the reasoning of *Siddle* is applicable here. Smith was convicted of knowingly manufacturing methamphetamines, a dangerous drug. Because he possessed a weapon during the commission of that felony drug offense, Smith was also convicted of misconduct involving weapons. *See* A.R.S. § 13-3102(A)(8). Commission of the drug offense is necessary to sustain a conviction for misconduct involving weapons; accordingly, the two crimes cannot pass the identical elements test. Nonetheless, the other two *Gordon* factors are applicable and weigh in favor of treating the two crimes as different acts. It is possible to knowingly manufacture a dangerous drug without also possessing a weapon. Similarly, the harm posed by manufacturing a drug poses a risk distinct from that posed by the potential use of a weapon during the course of the manufacturing. The two crimes represent different acts, and consecutive sentences are therefore permissible. Consequently, the trial court did not commit error, much less fundamental error, by imposing consecutive sentences.

## CONCLUSION

**¶27** We affirm the convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama