NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

VERNON STUART NASH, *Appellant*.

No. 1 CA-CR 14-0486
FILED 10-20-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-006729-001 DT
The Honorable Jerry Bernstein, Commissioner

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Janelle A. McEachern, Chandler
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Peter B. Swann joined.

**G O U L D**, Judge:

¶1        Vernon Stuart Nash ("Nash") was sentenced on July 18, 2014; he filed a notice of appeal on July 23, 2014.  Nash's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising this Court that after a search of the entire appellate record, no arguable ground exists for reversal.  Nash was granted leave to file a supplemental brief *in propria persona*, and did so on June 12, 2015.

¶2        Our obligation in this appeal is to review "the entire record for reversible error."  *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(1) (West 2015).

**Facts and Procedural History**

¶3        In the early morning hours of May 2011, a police officer driving on State Route 101 saw Nash driving in excess of 100 mph in a 55 mph zone.  The officer observed Nash's vehicle weaving and making sharp and abrupt corrections.

¶4        Nash exited the 101, driving 90 mph down the exit ramp.  At the end of the ramp, Nash locked his breaks to avoid hitting an SUV stopped at a red light.  The officer then activated his emergency lights, and Nash turned into a parking lot and stopped his vehicle.

¶5        At the time of the stop, the officer received information that the car was reported stolen.  Based on this information, he conducted a high risk traffic stop.  It was later determined, however, that Nash had not stolen the vehicle.

¶6        The officer instructed Nash to exit the vehicle, and noticed that he had trouble getting out if the car unassisted and his body twitched and swayed.  Nash was not compliant with the officer's instructions, and he became highly agitated during the stop.  As a result, the officer placed Nash in the back of the patrol car and took him to the police station.

¶7        On the way to the station, the officer driving the patrol car observed Nash in a highly agitated state; he then observed Nash quickly fall into a deep sleep.  When they arrived at the station, Nash was so fast asleep that it took the officer a few minutes to wake him up.

¶8            Based on his observations of Nash's driving, as well as his behavior at the traffic stop and in the patrol car, the officer believed that Nash was under the influence of drugs or alcohol.  He obtained a search warrant, and two vials of blood were drawn from Nash.  Testing later revealed that Nash had methamphetamines in his blood.

¶9            Once Nash was charged, he was assigned an attorney to represent him.  While the charges were pending, Nash's competency to stand trial was evaluated by three mental health experts.  Two of the three experts determined that Nash was competent, while one expert determined he was not competent.  After a competency hearing, the court determined that Nash was competent to stand trial.

¶10            Nash eventually requested new counsel.  The trial court granted his request.  However, Nash was not satisfied with his second attorney, and requested appointment of a third attorney.  The trial denied this request.  In response, Nash requested that he be allowed to represent himself.

¶11            The court held a hearing regarding Nash's request to represent himself.  At the conclusion of the hearing, the court found that Nash knowingly, intelligently, and voluntarily waived his right to representation by an attorney; Nash also signed a written waiver of counsel.  The court ordered Nash's second attorney to serve as advisory counsel.

¶12            At the final trial management conference, Nash requested that the second vial of blood, extracted on the day of his arrest, be independently tested.  The trial court instructed Nash's advisory counsel to make arrangements for the blood sample to be tested, and to pay for the test out of the OPTS budget.  At the end of the trial, however, Nash informed the court the blood analysis had never been performed.

**Discussion**

¶13            Nash raises several issues in his supplemental brief. First, he alleges the officers lacked reasonable suspicion to conduct the traffic stop.  Second, he asserts there was insufficient probable cause supporting his arrest and the issuance of the search warrant.  Third, he claims he was deprived of a fair trial because the blood sample was not tested.  Fourth, Nash alleges he was not competent to represent himself. Fifth, he alleges the court abused its discretion in denying his request for a mitigation specialist.  Sixth, Nash claims he was not provided a complete copy of his trial transcripts.

## I.      Traffic Stop

**¶14**           "A police officer need only have reasonable suspicion that a person . . . has violated a traffic law to conduct a stop of a vehicle." *State v. Moran*, 232 Ariz. 528, 531, ¶4 (App. 2013); *See State v. Acosta*, 166 Ariz. 254, 256 (App. 1990).   "Under this standard, the officer must possess 'a particularized and objective basis' for suspecting that the particular person stopped had committed such acts." *Moran*, 232 Ariz. at 531, ¶ 4, citing *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118 (1996).

**¶15**           Arizona defines the crime of excessive speed, as a person "exceeding eighty-five miles per hour." A.R.S. § 28-701.02(A)(3).  A person violating this statute is guilty of a class three misdemeanor.  A.R.S. § 28-701.02(B).

**¶16**           The record shows the police had reasonable suspicion to stop Nash for the crime of excessive speeding.   The officer observed Nash driving in excess of 100 miles per hour.  Additionally, he observed Nash drive 90 miles per hour down the exit ramp.

## II.     Arrest

**¶17**           We review the existence of probable cause de novo.  *State v. Blackmore*, 186 Ariz. 630, 632 (1996).   "A police officer has probable cause when reasonably trustworthy information and circumstance would lead a person of reasonable caution to believe that a suspect has committed an offense." *State v. Hoskins*, 199 Ariz. 127, 137-38, ¶ 30 (2000), vacated in part on other grounds.

**¶18**           Here, the officer had probable cause to believe that Nash committed the crime of excessive speeding. The officer personally witnessed Nash's driving and verified his speed.  Accordingly, we find no error.

## III.    Search Warrant

**¶19**           Search warrants are presumed to be valid *. See State v. Hyde*, 186 Ariz. 252, 268 (1996).  A magistrate's determination of probable cause should be given great deference.  *State v. Edwards*, 154 Ariz. 8, 12 (App. 1986). Thus, even if the sufficiency of the warrant is doubtful or marginal, it must be examined in light of the presumption of validity given to all search warrants. *Id*.

¶20        The search warrant affidavit establishes probable cause to believe that Nash committed the offense of driving under the influence of drugs or alcohol. The officer stated in his affidavit that Nash was driving over 100 MPH in a 55 MPH zone, was weaving in traffic, nearly drove off the road, and almost struck a car. The officer avowed that Nash had watery eyes, was swaying excessively, displayed mood swings, and was twitching and thrashing around at the scene and in his patrol car. The officer also noted that Nash fell asleep in the patrol car.

## IV.     Independent blood analysis

¶21        It appears from the record that a sample of Nash's blood was preserved by the State. At the Final Trial Management Conference, the trial court directed Nash's advisory counsel to make arrangements with the Gromes Laboratory to test Nash's blood sample. In addition, the trial court ordered the cost to be deducted from the OPTS budget.

¶22        Based on the record before us, we are unable to conclude there is error. The State preserved the blood sample, and had no duty to test the sample. *State v. Vannoy*, 177 Ariz. 206, 212 (App. 1993) (state has no duty to gather evidence for a defendant). The record does not show why the sample was not tested. Moreover, without any test results, any potential prejudice suffered by Nash is purely speculative.

## V.     Competency: Self-Representation

¶23        "A defendant has a constitutionally protected right to be represented by counsel or to proceed without counsel if [he] so chooses." *State v. De Nistor*, 143 Ariz. 407, 412 (1985; Ariz. Const. Art. 2, § 24. We review a trial court's determination that a defendant has knowingly, intelligently, and voluntarily waived counsel for an abuse of discretion. *State v. Gunches*, 225 Ariz. 22, 24, ¶8 (2010),.

¶24        Nash had the constitutional right to waive his court appointed counsel and represent himself, and he chose to do so. The trial court ensured that he was competent to make the decision by reviewing his competency evaluations, questioning him about his abilities, and then requiring him to sign a written waiver of his rights.

¶25        "We review a trial court's finding of competency for an abuse of discretion." *State v. Glassel*, 211 Ariz. 33, ¶ 27 (2005). We do not reweigh the evidence. *State v. Arnoldi*, 176 Ariz. 236, 239 (App. 1993), (overruled on

other grounds by *State v. Jones*, 235 Ariz. 501, 503 ¶ 10 (2014)). Instead, "[w]e must determine whether reasonable evidence supports the trial court's finding that the defendant was competent, considering the facts in the light most favorable to sustaining the trial court's findings." *Glassel*, 211 Ariz. at 44, ¶ 27.

**¶26** We find no abuse of discretion regarding the trial court's determination that Nash was competent to represent himself. Nash was evaluated by three mental health experts. Two of the three experts found that Nash was competent to stand trial. Based on this evidence, the court determined that Nash was competent to stand trial.

## VI. Mitigation Specialist

**¶27** Nash challenges the trial court's denial of his request for a mitigation specialist. Based on the record, we conclude there is no error. Arizona only requires the appointment of a mitigation specialist for indigent defendants in capital cases. Ariz. R. Crim. P. 15.9. Nash is not a party to a capital case and, therefore, was not entitled to a mitigation specialist.

## VII. Transcripts

**¶28** Finally, Nash argues that he was not provided with the transcripts of Officer Crowley's testimony. However, apart from Nash's assertion, nothing in the record supports his claim. Indeed, Janelle A. McEachern, Nash's appointed appellate attorney, stated that she provided Nash with the subject transcripts on May 27, 2015.

### Conclusion

**¶29** We have read and considered the entire record and have found no meritorious grounds for reversal of Nash's conviction or for modification of the sentence imposed. *Clark*, 196 Ariz. at 541, ¶50. Nash was present at all critical stages of the proceedings and was represented by counsel for a period, and he elected to proceed pro per. All proceedings were conducted in compliance with the Arizona Riles of Criminal Procedure, and substantial evidence supported the finding of guilt. Accordingly, we affirm.

**¶30** Counsel's obligations pertaining to Defendant's representation in this appeal have ended. Counsel need do nothing more than inform Defendant of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the

Arizona Supreme Court by petition for review.  State v. Shattuck, 140 Ariz. 582, 584-85 (1984).  Defendant shall have thirty days from the date of this decision to proceed, if he so desires, with an in propria persona motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: ama