NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ASHLEIGH NOELLE OLIVAS, *Appellant.*

No. 1 CA-CR 23-0011
FILED 1-30-2024

Appeal from the Superior Court in Yavapai County
Nos.  P1300CR202000228
P1300CR202000800
The Honorable Debra R. Phelan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1        Ashleigh Noelle Olivas appeals her convictions and sentences for possession of narcotic drugs, possession of dangerous drugs, and possession of drug paraphernalia. For the following reasons, we affirm her convictions and sentences in Yavapai County case no. P1300CR202000800.[1]

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the defendant's convictions. *State v. Thompson*, 252 Ariz. 279, 287 n.3 (2022).

¶3        In May 2020, police obtained a search warrant for Olivas' apartment. The search warrant affidavit said that between November 2019 and April 2020, information from three arrested persons, one overdose victim, and two traffic stops led police to believe Olivas and her boyfriend, J.W., were selling drugs out of their apartment.

¶4        The first arrested person said J.W. "was selling powder Fentanyl, Heroin, and mimic M-30 pills out of his residence" and that J.W. traveled to Phoenix to purchase drugs. The second arrested person said that he or she bought fentanyl from J.W., J.W. was selling it out of his "house," identified the apartment's address, and said J.W. drove a tan truck with a sticker displaying J.W.'s last name on the back. The third arrested person said he or she bought fentanyl from J.W. and Olivas, that J.W. sold drugs out of his "home," identified the apartment's approximate location, and said that Olivas assisted J.W. "in the sales of drugs such as Heroin, Methamphetamine, Fentanyl, and Xanax from her BMW vehicle."

---

[1] Olivas also pled guilty to three charges in Yavapai County case no. P1300CR202000228. The superior court sentenced Olivas for the -228 counts at the same time as the -800 counts and her notice of appeal lists both cases. But defendants who plead guilty waive the right to a direct appeal and must seek post-conviction relief, so this decision resolves only issues relating to the -800 case. *See* Ariz. R. Crim. P. 17.1(e), 33.1.

Similarly, the overdose victim said that he bought "[f]entanyl from a white male subject" with J.W.'s first name.

¶5    During the first traffic stop, police identified J.W. and Olivas and found drug paraphernalia inside the vehicle and Olivas' purse. Olivas "admitted her involvement in all paraphernalia located." During the second traffic stop, police identified J.W. as the vehicle's passenger and found foil with residue consistent with heroin inside the vehicle.

¶6    Olivas was at the apartment when the police served the search warrant. Police found methamphetamine, heroin, fentanyl, drug paraphernalia, and firearms inside the apartment. Police also found documents listing the apartment as Olivas' address and a debit card with her name on it. When police interviewed Olivas, she admitted that she used illicit drugs but denied selling them. Olivas also said that she knew J.W. was selling drugs, people who could not reach J.W. sometimes contacted her to discuss "quantity," and she implied J.W. was supplying her with drugs.

¶7    In July 2020, the State charged Olivas with possession of narcotic drugs for sale (counts 1, 2, and 4), manufacture of narcotic drugs (count 3), possession of dangerous drugs for sale (count 5), possession or use of dangerous drugs (count 6), possession or use of marijuana (count 7), possession of drug paraphernalia (counts 8–13), misconduct involving weapons (counts 14–15 and 18–20), using a building for the sale or manufacture of narcotic drugs (count 16), and theft (count 17). Upon motion, the superior court dismissed counts 2, 6–10, 12–13, and 17–20.

¶8    Before trial, Olivas moved to suppress the evidence obtained from the search warrant. The superior court held an evidentiary hearing and denied the motion.

¶9    In September 2021, the jury acquitted Olivas of counts 3 and 14–16. The jury also acquitted Olivas of possession of narcotic drugs for sale and possession of dangerous drugs for sale but found Olivas guilty of the lesser-included offenses of possession of narcotic drugs (counts 1 and 4) and possession of dangerous drugs (count 5). The jury also found Olivas guilty of possession of drug paraphernalia (methamphetamine related) (count 11). The superior court sentenced Olivas as a category three repetitive offender to concurrent, mitigated prison terms of 6 years each for counts 1, 4, and 5, and 2.25 years for count 11.

¶10          We have jurisdiction over Olivas' timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

   I.    The superior court did not err in denying Olivas' motion to suppress.

¶11          Olivas argues the superior court erred in denying her motion to suppress because the search warrant affidavit did not establish probable cause. We review the denial of a motion to suppress for an abuse of discretion but review issues of law de novo. *State v. Nissley*, 241 Ariz. 327, 330, ¶ 9 (2017). "[W]e consider only the evidence presented at the suppression hearing and view that evidence in a light most favorable to upholding the court's ruling." *State v. Lietzau*, 248 Ariz. 576, 579, ¶ 8 (2020) (citation omitted).

¶12          The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures, and evidence seized in violation of its protection is generally excluded from criminal trials.[2] *State v. Peoples*, 240 Ariz. 244, 247, ¶¶ 8–9 (2016). Search warrants must be supported by probable cause. *State v. Sisco*, 239 Ariz. 532, 535, ¶ 7 (2016). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶13          Olivas argues the search warrant affidavit was deficient because it contained uncorroborated information and police "failed to conduct any additional surveillance before applying for [the] warrant." A tip from one unreliable informant may be insufficient, but the corroboration of details supports finding probable cause. *See State v. Williams*, 184 Ariz. 405, 406–07 (App. 1995); *Gates*, 462 U.S. at 241–43. *See also United States v. Yarbrough*, 852 F.2d 1522, 1533 (9th Cir. 1988) ("Interlocking tips from different confidential informants enhance the credibility of each." (citation omitted)).

¶14          Multiple sources corroborated the evidence here. Four informants said J.W. and/or Olivas were connected to drug sales. Police

---

[2] Olivas also cites Article 2, Section 8, of the Arizona Constitution, but she does not develop it as a separate argument and has therefore waived it. *See State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8 (App. 2001).

also conducted traffic stops that connected J.W. and Olivas to drug paraphernalia. Finally, Olivas admitted her involvement in drug paraphernalia, and, as the superior court acknowledged, one of the crimes alleged in the affidavit was possession of drug paraphernalia.

¶15 Olivas also argues that the affidavit was insufficient because it did not include the informants' names, "whether they were reliable, whether they were known to officers, whether promises were made in return for the information or what charges they faced." An informant's veracity, reliability, and basis of knowledge are "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause.'" *Gates*, 462 U.S. at 230.

¶16 The affidavit was sufficient under the totality of circumstances. Although the affiant detective testified the informants were unreliable, he also testified that the police did not request the warrant until "numerous" people provided corroborating information. Further, the informants were not named, but they were not anonymous. The affiant detective testified that the informants were different persons, showing the police knew their identities. Also, the police arrested three of the informants, and police presumably know the identities of the persons they arrested. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (showing known informants are considered more reliable than anonymous informants). The information in the affidavit also connected the informants to drug sales, which gave the issuing judge a basis to assess their reliability because the court could infer that the informants may be facing drug-related charges, yet still conclude that the information was reliable. *See State v. McCall*, 139 Ariz. 147, 156–57 (1983) (allowing a magistrate to draw reasonable conclusions from the facts provided).

¶17 Here, three of the informants said they bought drugs from J.W. and/or Olivas, so the basis for their knowledge was their personal involvement in criminal activity. *See United States v. Rowland*, 464 F.3d 899, 908 (9th Cir. 2006) (stating tips are more reliable when informants reveal the basis of their knowledge); *State v. Coats*, 165 Ariz. 154, 159 (App. 1990) (stating a speaker's personal observations of criminal conduct are presumed to be reliable). Identifying who sold the drugs connected the informants to drug sales. *See State v. Edwards*, 154 Ariz. 8, 12–13 (App. 1986) (finding an informant was sufficiently trustworthy because providing the information would not deflect all the blame and the informant would not profit from lying); *State v. Rodgers*, 134 Ariz. 296, 301 (App. 1982) (indicating statements made against a speaker's interests lend credibility to her assertions). And, even if the informants were promised lenity, that would

not make their statements per se unreliable.  *See United States v. Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (stating a promise of lenity does not make information per se unreliable because the informant could not achieve his goal by providing false information).

**¶18**　　　　The totality of the circumstances supports the superior court's finding that probable cause supported the warrant.  The court did not err in denying the motion to suppress.

　II.　The superior court did not fundamentally err by failing to list the lesser-included elements in the jury instructions separately.

**¶19**　　　　Olivas argues the superior court fundamentally erred because the jury instructions did not list the elements of possession of narcotic drugs and possession of dangerous drugs.  We review jury instructions de novo to determine whether they correctly state the law.  *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014).

**¶20**　　　　Olivas did not object to the instructions in the superior court, so she must show fundamental error.  *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).  To prevail under fundamental error review, a defendant must show: (1) the superior court erred, and (2) the error was fundamental — meaning the error went to the foundation of the case, took from the defendant a right essential to her defense, or was so egregious that she could not possibly have received a fair trial.  *Id.* at 142, ¶ 21.  Under the first or second prong, the defendant must also show prejudice, but if she shows the error was so egregious that she could not possibly have received a fair trial, prejudice is presumed.  *Id.*

**¶21**　　　　The jury instructions listed the elements of possession of narcotic drugs for sale and possession of dangerous drugs for sale and defined the terms narcotic drug, dangerous drug, possession, knowingly, and sale.  But the instructions did not separately list the possession of narcotic drugs and possession of dangerous drugs elements.

**¶22**　　　　"The failure to instruct the jury on an essential element of an offense is error."  *State v. Fullem*, 185 Ariz. 134, 138 (App. 1995) (citation omitted). Olivas requested instructions on the lesser-included offenses, and she was convicted of those offenses.  The State concedes that the "oversight was arguably erroneous" but argues that Olivas has not shown that the error was fundamental and prejudicial.  We agree.

**¶23**　　　　"A trial court has a duty to instruct on the law relating to the facts of the case when the matter is vital to a proper consideration of the

evidence, . . . and failure to do so constitutes fundamental error." *State v. Johnson*, 205 Ariz. 413, 417, ¶ 11 (App. 2003) (citation omitted). We "will not reverse a jury verdict based on an erroneous instruction unless the instructions, taken as a whole, could reasonably mislead a jury." *State v. Rix*, 536 P.3d 253, 266, ¶ 43 (Ariz. App. Aug. 29, 2023) (citation omitted).

**¶24** The instructions listed the greater offenses' elements and clearly stated that possession of narcotic drugs and possession of dangerous drugs were lesser-included offenses. The only difference between the greater and lesser-included offenses is the "for sale" element. *See* A.R.S. §§ 13-3407(A)(1)–(2), -3408(A)(1)–(2). And given that the titles of the greater offenses are "possession of narcotic drugs for sale" and "possession of dangerous drugs for sale" and the titles of the lesser-included offenses are "possession of narcotic drugs" and "possession of dangerous drugs," the jury could have easily determined that the only difference is the "for sale" element. *See State v. Olivier*, 1 CA-CR 22-0294, 2023 WL 2378451, at *3–4, ¶¶ 14–19 (Ariz. App. Mar. 7, 2023) (mem. decision) (finding no fundamental error when the instructions listed the greater offense's elements, but not the lesser-included offense's elements).

**¶25** Nor does the record show the jury was confused or misled. Jurors submitted various questions throughout the trial. But other than a question about the difference in legal threshold amounts, which is irrelevant here, jurors asked for no clarification on the difference between the greater and lesser-included offenses. Thus, when read as a whole, the instructions were not misleading.

**¶26** Olivas also argues fundamental error occurred because "[t]he jurors were not instructed that [Olivas] must have knowingly possessed the drugs." It is fundamental error not to instruct the jury on the applicable mens rea. *See State v. Kemper*, 229 Ariz. 105, 106–07, ¶¶ 5–6 (App. 2011). But that did not happen here.

**¶27** A conviction for possession of narcotic drugs and possession of dangerous drugs requires the offender to knowingly possess drugs. A.R.S. §§ 13-3407(A)(1), -3408(A)(1). This is the same mens rea required for the greater offenses. A.R.S. §§ 13-3407(A)(2), -3408(A)(2). As noted, the jury was instructed on the greater offenses' elements, and it could have easily determined that to find Olivas guilty of possession, it must apply the greater offenses' elements, minus the "for sale" element. Further, the instructions defined "possession" as "knowingly exercis[ing] dominion or control over property" and correctly defined knowingly. *See* A.R.S. § 13-105(10)(b). Thus, by looking at the greater offenses' elements and the

definition of possession, the jury could have concluded that to find Olivas guilty of possession, it needed to find Olivas knowingly possessed the drugs.

**¶28** An error is also fundamental if it takes from the defendant an "essential right" by depriving "the defendant of a constitutional or statutory right necessary to establish a viable defense or rebut the prosecution's case." *Escalante*, 245 Ariz. at 141, ¶ 19 (citations omitted). At trial, Olivas argued that she never sold drugs and was merely present at the apartment. Nothing in the record suggests the erroneous instructions impacted Olivas' ability to present this defense. The jury was also instructed that "[g]uilt cannot be established by the defendant's mere presence at a crime scene, mere association with another person at a crime scene or mere knowledge that a crime is being committed," and this instruction was not limited to the greater offenses. We presume the jury followed the court's instructions and did not convict Olivas based on her mere presence at the crime scene. *See State v. Gallardo*, 225 Ariz. 560, 569, ¶ 40 (2010).

**¶29** Even if Olivas could show fundamental error, she must also show prejudice. Olivas argues she was prejudiced because "the jurors were not properly instructed on the law."

**¶30** "To prove prejudice, [the defendant] must show that a reasonable, properly instructed jury 'could have reached a different result.'" *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (citation omitted). A defendant must "affirmatively 'prove prejudice' and may not rely upon 'speculation' to carry [her] burden." *Id.* (citation omitted). "Given the defendant's heavy burden to prove prejudice, it 'is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" *State v. Fierro*, 254 Ariz. 35, 42, ¶ 24 (2022) (citations omitted).

**¶31** Olivas' convictions for drug possession required finding: (1) Olivas knowingly possessed the substances, and (2) the substances were heroin, methamphetamine, and fentanyl. *See* A.R.S. §§ 13-3407(A)(1), -3408(A)(1). Olivas did not argue that the substances found at her apartment were not methamphetamine, heroin, and fentanyl. Instead, she argued that the State could not prove she knowingly possessed the drugs.

**¶32** Olivas was at the apartment when the police served the warrant, and the police found documents listing the apartment as her address. Olivas admitted she used illicit drugs, and she knew J.W. was

selling drugs. Olivas also implied that J.W. supplied her with drugs, which supports finding Olivas knowingly possessed the drugs found in the apartment. And, nothing in the record suggests the jury could have reached a different result had the lesser-included instruction been given.

¶33 Finally, Olivas argues she was prejudiced because "the jurors were . . . only told they could consider the charge of possession of a drug if they were unable to reach a verdict on the original charge or unable to reach a unanimous verdict." Olivas appears to be arguing the jury convicted her of the lesser-included possession charges simply because it acquitted her of the greater offenses. But count 3 also had a lesser-included offense, and the lesser-included offense's elements were not listed in the instructions, and the jury acquitted Olivas of count 3's greater and lesser-included offenses. This refutes Olivas' argument that the jury convicted her of the other lesser-included offenses only because it acquitted her of the greater offenses.

¶34 Thus, the superior court did not fundamentally err by failing to list the lesser-included elements in the jury instructions separately.

## CONCLUSION

¶35 We affirm Olivas' convictions and sentences in Yavapai County case no. P1300CR202000800.



AMY M. WOOD • Clerk of the Court
FILED:    AA